## LOONEY *v.* MARTIN.

123    209
f129    276
130    850

Prima facie the right to the custody of an infant is in the father ; and where this is resisted upon the ground that the father has relinquished his parental rights by contract, a clear and strong case must be made, and the terms of the contract, to have the effect of depriving the father of his control, must be definite and certain. Such a case was not made on the trial in the city court, and the superior court did not err in sustaining the certiorari.

Submitted April 14, — Decided June 14, 1905.

14

Certiorari. Before Judge Russell. Franklin superior court. October 1, 1904.

This was a habeas-corpus proceeding for the possession of two minor children, Forest and Devery Martin, aged respectively seven and four years. It originated in the city court of Carnesville, and was brought by Looney, the maternal grandfather of the children, against their father. The judge of the city court awarded the children to the grandfather; whereupon the father took the case, by certiorari, to the superior court. The certiorari was sustained, and the case remanded for another hearing, and Looney brought the case to this court by bill of exceptions. The evidence for the plaintiff in the city court was substantially as follows: Martin's wife, who was the daughter of Looney, has been dead about three years. Since the death of their mother the two children, Forest and Devery Martin, have been staying at Looney's house. Their father has contributed only a small sum to their support. About September 1, 1902, Martin was at Looney's house, when Looney asked him if he was not going to give him the children, and Martin replied that Looney could keep them for his lifetime. Looney had frequently made the same request of Martin prior to this time, and Martin had always said that he would not give his children away. Looney is able to take care of the children. Some time during the fall of 1901, Looney and Martin had a conversation relative to Martin's marrying a second time, and Looney told Martin that he ought to marry some one that would be good to his first wife's children. Martin admitted that he intended to marry again, and said that he and the young lady had talked over the matter of the children; that he had told her that if she did not feel that she could take them all three and be a mother to the two children, they had better not marry; and that she had expressed a willingness to do as he wished. Looney then told Martin that he did not think he could do better than to marry. In April after the promise made by Martin that Looney should have the children for his lifetime, Martin came to Looney's house and took the children home with him. Subsequently Looney demanded possession of the children on the contract, and the demand was refused. The evidence for the defendant was substantially as follows: After the death of Martin's wife, all of his household

effects were moved to Looney's house, and the children went to live with the Looneys. Some time in August, 1902, Martin, with a friend, went to get his furniture from Looney. Looney asked him if he was not going to let him have the children. Martin replied that he would not; that the children could stay part of the time with him and part of the time with their grandparents, but that he would not give the children to anybody. Mrs. Looney, who was present, remarked that she would have a better understanding than that, and Martin replied that it was either that or nothing. The Looneys had frequently asked him to give them the children, and he had always refused, as he never had the remotest idea of giving them to anybody. About three or four weeks before the issuance of the writ of habeas corpus, Martin went to Looney's house and took the children home with him, Looney giving his consent at the time. When Looney afterwards came and tried to get the children again, he told him that the only way anybody could get them would be first to take his life.

*J. B. Jones* and *W. A. Bailey*, for plaintiff.
*J. A. Neese* and *A. G. Golucke*, for defendant.

CANDLER, J. (After stating the foregoing facts.) No question is made as to the fitness of either of the parties to the action to have charge of small children, or of their financial ability to take care of them. The only issue raised by the evidence is whether or not such a clear and definite contract of relinquishment was made by the father as to warrant the habeas-corpus court in awarding the minor children to the grandfather rather than to the father. This case, in its facts, bears a striking resemblance to the case of *Miller* v. *Wallace*, 76 *Ga.* 479. That case, like this, was a contest between the father and the maternal grandparents of a minor child. It appeared that the mother of the child, shortly before her death, expressed the wish that her mother and father should take, care for, and raise her child; and that the father of the child stated that as his wife wanted her mother to have the baby, she should do so. About a month after his wife's death, the father of the child stated that he wanted his mother-in-law to take the child and raise her as she had her own daughter, and make such a woman of her. The father subsequently,

by stratagem, gained possession of the child, and the grand-
parents brought habeas corpus.   The trial court awarded the
child to the grandparents, but on writ of error to this court the
judgment was reversed.   It was held: Prima facie the right of
custody of an infant is in the father, and where this is resisted
upon the ground of his unfitness for the trust, or other cause, a
proper regard for the sanctity of the parental relation will require
that the objection be sustained by clear and satisfactory proofs;
and a clear and strong case must be made to sustain an objection
to the father's right.   Where it is insisted that the father has re-
linquished his right to the custody of his child to a third person
by contract, the terms of the contract, to have the effect of de-
priving him of his control, should be clear, definite and certain."
Tested by this rule, we think the judge of the superior court was
justified in holding that the habeas-corpus judge had not made
a proper use of the discretion vested in him.   It is true that
there was positive evidence that the father promised the grand-
father that he should have the children during the latter's life-
time; but this evidence was as positively contradicted by witnesses
for the defendant; and the circumstances were not such as to
make out the clear, convincing case required by the ruling in *Mil-
ler* v. *Wallace*, supra, before the father could be deprived of the
custody and control of his children.   Looney and his wife had
persistently urged Martin to give them the children, and he had
stubbornly refused to listen to such a proposal.   On all occasions,
whenever the circumstances warranted, Martin had asserted his
right to the possession of the children, and had stated that he would
never give them to anybody.   Apparently he had placed the
children with the Looneys only temporarily, until he could make
some arrangement of a permanent nature.   During this time he
had continued to contribute to their support.   In contracting a
second marriage he had made special provision for his children,
and had it clearly understood that they were to have a home
with him.   All these circumstances throw a cloud over the state-
ment of the witnesses that Martin agreed that Looney should
have the children during his lifetime, and give the case a doubt-
ful aspect.   It is not the "clear and strong case" which the law
requires as showing a relinquishment of the parental right.   As
was said in the case of *Lamar* v. *Harris*, 117 *Ga.* 997, "the

law does not fly in the face of nature, but rather seeks to act in harmony with it;" and therefore more than the usual proof is required to sustain a case based upon the contention that a father, fit and able to care for his offspring, has voluntarily relinquished his right to its custody and control. For these reasons we conclude that the court below properly sustained the certiorari.

*Judgment affirmed. All the Justices concur, except Simmons, C. J., absent.*