## 40. WALKER *v.* JONES.

1. In the hearing of a habeas corpus to determine the custody of a child, the trial judge is invested with a broad discretion, which, however, is not arbitrary or unlimited, but is to be guided and governed by rules of law. When it appears that upon such a hearing the judge was influenced by a misconception of the law and of his powers in the matter, a new trial will be granted, that the discretion may be exercised in accordance with the true rule.
2. Upon a contest as to the custody of a child between the father and a person who acquired the custody of the child peaceably, it is not required that the testimony against the father's fitness be overwhelming; it is necessary only that the proof be clear and satisfactory, and that a strong case be made out.
3. In such cases the welfare of the child is the paramount consideration.

4. When a court is asked to lend its aid to put the infant into the custody of the father and to withdraw him from other persons, the trial judge should look into all the circumstances and ascertain whether it will be for the real permanent interest of the infant; and if the infant be of sufficient discretion, his wishes should also be consulted.

Habeas corpus, from city court of Atlanta—Judge Reid.   June 6, 1906.

Argued January 16,—Decided January 23, 1907.

*W. S. Thomson, Candlers, Thomson & Hirsch,* for plaintiffs in error.

*Rosser & Brandon, I. S. Hopkins,* contra.

POWELL, J.   Jones brought habeas corpus to regain the custody of his son, Jean Walker, formerly Claude Jones (the child's name having been changed by an order of the court), against Walker and Mrs. Walker.   It appears from the record that in 1894, Mrs. Pinkie V. Jones, the mother of the boy, secured a total divorce from the plaintiff, on the ground of cruel treatment, and by the decree in that case the child was awarded to her.   The mother died recently and left the child in the hands of the defendants, one of whom was his maternal uncle and the other his maternal grandmother. It seems that the mother had made an ineffectual attempt to make Walker, the uncle, testamentary guardian of the boy.   Upon the hearing a great deal of evidence was submitted upon the issue as to the father's unfitness to have the custody of the child.   The evidence was conflicting, but considering it as a whole, and giving to the testimony offered by the plaintiff its full value and the bene-fit of all legitimate inferences to be drawn therefrom, it may still be fairly said, from the undisputed facts, that it failed to establish for the plaintiff a very exemplary character, and on the other hand left strong reasons for refusing him the custody of the child.   He had been convicted in May, 1905, of gaming and of running a gam-ing-house (chain-gang sentences of twelve months each in these cases being suspended during good behavior); his name had been publicly associated with that of a prostitute; even by his own ad-missions his conduct had not been chaste; he had been conducting a pool-room for betting on horse-races; and the nearest approach he is shown to have made in recent years toward having a fair and reputable means of a livelihood was that at the time of the trial he was employed as the agent of a man who ran a turf exchange in Birmingham.   He had not been associated with the child since

its earliest infancy, and had furnished nothing to its support. He is perhaps not to be held culpable in this neglect, since the decree in the divorce case took the custody of the child from him. After his divorce from the mother of the child, he married again, and the second wife secured a divorce from him, and the jury in that case refused to remove his disabilities. There was testimony from the defendants, which for the purpose of the investigation in this court is not to be given any controlling weight, since it was disputed and the court below found against it, which tended to show that the plaintiff was a notorious gambler and that he lived in a lewd-house, and that he was otherwise of very bad character. Be it said to the plaintiff's credit, however, that he proved an excellent character for abstinence from intoxicating liquors, for personal honesty in business affairs, and for the taking care of an aged mother and other female relatives. The plaintiff returned no property for taxation, and the boy had sufficient estate to support him.

The following judgment was rendered by the trial judge: "In this case it is my opinion that upon the death of the child's mother, its father at once became entitled, under the law, to the custody of the child. This right of the father is recognized in law as superior and paramount to that of all others, and it must be recognized and enforced unless legally forfeited. In my opinion it does not appear in this case that such right has been forfeited by the father in any of the specific methods provided by law. I do not think the failure of the father to provide support during the time it was held legally in the custody of the mother under the decree of the court in the divorce suit can be held to work a forfeiture of his legal right. The father's right, then, to the custody of the child not having been forfeited in any of the legal methods specified, the case must be considered as if the father had in fact the custody of the child, as well as the right to its custody. To take the child from the custody of its father and give it to some third person is a most grave exercise of judicial power, and can only be justified when the circumstances of the case absolutely demand it, for the good of the child itself; and this necessity must be made apparent from the test of the actual experience of the father in caring for his child, or by overwhelming evidence of the unfitness of the father to properly discharge this duty. I do not think in this case the facts would warrant me to exercise the discretion of

awarding the child to a third person.   It is therefore ordered that the custody of the child mentioned in the habeas corpus be awarded to Charles C. Jones, the petitioner; but it is ordered that this judgment be superseded until the respondents have opportunity to file bill of exceptions and take this case to the Supreme Court, and until the final disposition of this case; meantime the said child to be kept within the jurisdiction of the court to abide the final judgment in the case."   The defendants, in addition to excepting generally to the judgment, further assign as error the refusal of the court to admit in evidence a pending indictment recently found against plaintiff, charging him with gambling; also the refusal of the court to admit in evidence the entire divorce proceedings, including the allegations of cruel treatment, in the case of Bernice Jones, the second wife, against the plaintiff, the court having admitted only the decree.

At the conclusion of the testimony the defendants produced the child, who was then over fourteen years old, and requested "an examination of the child by the court touching his relationship with his father and his maternal grandmother and uncle, with a view to ascertaining his preferences in the matter, and what would be the best for the child."   The court refused to examine the child or consider his wishes in the matter; and to this ruling the defendants excepted, though the assignment of error does not show or state any contention as to what an examination of the child would have shown, nor as to what wish he would have expressed.

1. Upon the hearing of a habeas corpus, to determine the custody of a child, the trial judge is invested with a broad discretion, which is not controllable by the appellate court except in cases of manifest abuse.   "Such discretion, however, is not arbitrary or unlimited, but is a discretion guided and governed by the rules of law."   *Miller* v. *Wallace*, 76 *Ga.* 479.   Where it is apparent that in the exercise of this discretion the trial judge was influenced by a misconception of the law or of his power in the premises, the judgment will be reversed and a new trial ordered, that the discretion may be exercised in accordance with the legal rule.   *Fears* v. *State*, 102 *Ga.* 274 (5 *a*); *McIntyre* v. *McIntyre*, 120 *Ga.* 68; *Thompson* v. *Warren*, 118 *Ga.* 644; *Central Ry. Co.* v. *Harden*, 113 *Ga.* 453; *Rogers* v. *State*, 101 *Ga.* 561; *Chestatee Pyrites Co.* v. *Cavenders Creek Co.*, 118 *Ga.* 255; *Gunn* v. *James*, 120 *Ga.* 482.

2. The learned trial judge, who heard this case in the court below, instead of rendering a mere formal judgment which, in the absence of any opinion or statement of his reasons, would have precluded inquiry as to the rule of decision by which he was guided in making up his judgment, has with commendable fairness fully set forth the grounds upon which his judgment is based. Upon an inspection of the opinion, given with his judgment, we find that he put upon the defendants the burden of proving the unfitness of the father by "overwhelming evidence." We do .not think that this is the degree of proof required in such cases. The expression "overwhelming evidence" occurs in the 8th headnote in the case of *Taylor* v. *Jeter*, 33 *Ga.* 195. In that case the child had been removed by a stranger from the State of its domicile into this State, in violation of the judgment of a court of competent jurisdiction of the former State, which had awarded the custody of the child to the father, after deciding a contest as to the father's fitness. Under the peculiar facts of that case, the Supreme Court held that it would not overthrow the father's authority "except upon a distinct issue and upon the most direct and overwhelming evidence to the contrary." Ordinarily in these cases the burden is not so great, and to sustain the objection to the father's prima facie right to the custody, it is necessary only that the proof be clear and satisfactory, and that a strong case be made out. *Looney* v. *Martin,* 123 *Ga.* 209; *Miller* v. *Wallace,* 76 *Ga.* 479 (*2b.*). The fact that the testimony in the record as to the plaintiff's unfitness may justly be characterized as being clear and strong, while it may not come up to the test of being overwhelming, strengthens us in the opinion that the trial judge really acted upon the belief that he had no discretion or power to refuse the plaintiff's application for the child unless the proof was overwhelming.

3. The statement in the opinion of the trial judge, that the right of the father is recognized in the law as superior and paramount to that of all others, while correct as a statement of a phase of the old common-law rule, is now hardly to be considered as an accurate statement of the more modern and humane doctrine. Our law now considers the welfare of the child the superior and paramount consideration. Civil Code, §§2452, 2503. We quote the admirable statement of the rule as announced by Justice Lamar in the case of *Williams* v. *Crosby,* 118 *Ga.* 298: "But in every case, regard-

less of the parties, the welfare of the child is the controlling and important fact. This is not intended to nullify the laws of nature; for in most instances it will be found that the legal right of. the parent and the interest of the child are the same. But if through misconduct or other circumstances it appears that the case is exceptional, and that the welfare of the child requires that it should be separated even from its parent, the parens patriæ must protect the helpless and the innocent. They are the wards of the court, the hope of the State, and the seed corn of the future. As the court felt that the decree prevented him from entering into the question as to the fitness of the parent or the interest of the child, there must be a new hearing." In *Lamar* v. *Harris,* 117 *Ga.* 1000, the court says: "It is hardly necessary to reiterate the well-recognized and universally applied doctrine that in habeas-corpus proceedings for the possession of a minor the paramount consideration is the welfare of the child." In Church on Habeas Corpus (2d ed.), §442, it is said: "In some of the earlier cases in this country the courts were inclined to follow the common-law doctrine that the father had an absolute right to his children superior to that of the mother and all others; but on habeas-corpus proceedings to determine the rightful and lawful custody, even in States which once followed the common-law rule, and whether the contention is between the father and mother for the possession, or between the father and a stranger, the question is now determined upon the more humane ground, generally recognized, that the welfare and interest of the child in controversy is the paramount consideration."

4. It will also be noted that in this case the trial court treated the matter as if it were an application by a stranger to have the custody of the child taken from the father. The possession of the child was not unlawfully obtained by the defendants. He was with relatives, of his own flesh and blood, in whose care he had been placed by the mother, to whom the custody had been awarded, and the father was the moving party in the suit. Justice Story in the case of Putnam *v.* Green (also cited as United States *v.* Green), 3 Mason, 485,—a case in which the mother had placed the child in the hands of its grandparents and habeas corpus was sued out by the father, says: "As to the right of the father to have the custody of his infant child, in a general sense it is true. But this is not on account of any absolute right of the father, but for the bene-

fit of the infant, the law presuming it to be for its interest to be under the nurture and care of his natural protector, both for maintenance and education.    When, therefore, the court is asked to lend its aid to put the infant into the custody of the father, and to withdraw him from other persons, it will look into all the circumstances, and ascertain whether it will be for the real, permanent interests of the infant; and if the infant be of sufficient discretion, it will also consult its personal wishes.    It will free it from all undue restraint, and endeavor, as far as possible, to administer a conscientious, parental duty with reference to its welfare.    It is an entire mistake to suppose the court is at all events bound to deliver over the infant to his father, or that the latter has an absolute vested right in the custody." · This learned jurist, further in the opinion, demonstrates, by citation of authority, that the same rule prevailed at common law.

We do not find that any of the other assignments show any reversible error.    We think that the judge properly excluded the petition in the second divorce suit.    The decree which he allowed in evidence was properly admitted, because it established the fact that, although Jones's second wife had obtained a divorce from him, his disability to contract matrimony again had not been removed and that he was in the anomalous state of being a married man without a wife and without the right to get another.    The facts alleged in the petition, however, were mere declarations of his wife, and, as to him, except in some contest between her and him over the same matter, were hearsay.    We are more doubtful as to the inadmissibility of the pending indictment against Jones, but do not reverse the judgment on that ground.

While in a case of this character it is eminently proper that the judge trying the case shall examine the child, especially if he be above the age of fourteen, with the view of learning the state of his feelings toward the respective parties and of consulting his wishes in the matter, we can not reverse a failure to do this, where the excepting party does not complete his assignment of error by showing injury,—that is to say, by showing that the child would have said something in favor of the excepting party.    However, since this case is to go back for another hearing, we do not deem it inappropriate to call attention to the fact that our Supreme Court has uniformly recognized that the wish of the child is a rele-

vant matter to be considered.   See *Chunn* v. *Graham,* 117 *Ga.* 551;
*Lamar* v. *Harris,* 117 *Ga.* 993.   Upon the next trial the court may,
of his own motion, make the examination; or, if he declines to do
so, it will be proper for either party to cause the boy to be examined
under oath as to the matter.   He is a competent witness to prove
the state of his feelings toward the parties and to inform the court
as to his wishes.                           *Judgment reversed.*