## PERKERSON *v.* PERKERSON.

Where husband and wife are living together, and the husband finds it necessary to move to an adjoining county to accept a business situation, and the wife, without sufficient grounds for her refusal, refuses to go with her husband and make her domicile with him, preferring to remain at the former domicile, such conduct on her part amounts to an abandonment of her husband, and she cannot recover alimony on the ground of desertion by the husband.

No. 3921. FEBRUARY 16, 1924.

Temporary alimony. Before Judge Blair. Cobb superior court. July 21, 1923.

*Morris, Hawkins & Wallace,* for plaintiff in error.

*J. Glenn Giles,* contra.

BECK, P. J. Mrs. Odah Perkerson filed a petition against C. C. Perkerson, her husband, for permanent and temporary alimony. Upon the hearing of the application for temporary alimony and attorney's fees, after the introduction of evidence by petitioner and respondent, the court passed an order adjudging that the respondent pay as temporary alimony $40 per month, and the sum of $40 as attorney's fees. The evidence shows that petitioner lives in

the City of Atlanta; that she is making the sum of $100 per month; that she has two daughters, one 19 years of age and the other 14 years of age. These are children by a marriage prior to her marriage to the respondent. The defendant for business reasons was compelled to move to Austell, where he is cashier in a bank, in which position he receives a salary of $137 per month. He lives in the home of his father and sister. Up to a short time before this suit was filed the petitioner's youngest daughter was living with the defendant in his home at Austell; and he seems to have treated her as his own child and to have had deep affection for her. The elder daughter, 19 years of age, is earning enough to support herself. There is some testimony given by the wife to show that at times the husband was sullen, and that he had about ceased visiting her regularly. But letters were introduced in evidence from defendant to plaintiff, urging her to come and live with him at Austell. These letters were couched in terms of deep affection and tenderness. The wife testified that pleasant relations existed between her and the members of her husband's family, but that she preferred living in Atlanta with her three children; it would be more agreeable to live in her home which she had purchased in Atlanta. It appears from the evidence that the husband had very little property outside of his salary, but he had at different times sent to his wife amounts aggregating over $1600 between the first of the year 1921 and May, 1923. One check for $25 sent by him to his wife had been returned because the amount was too small.

Under the evidence contained in this record, we are of the opinion that the court should have refused to allow the wife alimony; for we are of the opinion that the testimony in this case is not sufficient to authorize a judgment for temporary alimony. The wife is making $100 per month. The evidence does not show that the husband deserted or abandoned her. He did go to Austell, but the evidence discloses that he went there bona fide for the purpose of accepting a position in a bank. During most of the time from the first of 1921 to a short time before the filing of this suit, he remitted to his wife considerable sums of money. The wife still owes a balance on the home which she has purchased in Atlanta. It is inferable that a part of the money which she has paid upon it was sent to her by her husband. In fact the entire record indicates that the husband has been liberal towards the wife in the matter of

providing for her, when the scantiness of his income is considered. The husband had the right to go to Austell and make his home there and to expect that his wife would go there with him; and it was her duty to go, unless some conduct upon his part justified her in remaining away. She testified that at times he was sullen; would come to his meals with his hat on his head, and once he said he was going away to leave her for good. But it is to be borne in mind that he had been visiting her at week ends regularly, and that he was compelled to be in Austell during the week. We cannot find anything in the testimony that authorized the wife to desert the husband; and if she refused to go and live with him without just cause, it was desertion. The wife's testimony in this case, in which we can assume she stated the case as favorably to herself as was consistent with the truth, does not justify her refusing to live with her husband. It is true that she states that they lived together as husband and wife from November, 1916, until March first, 1923, and then "without cause or provocation he left me." This is a conclusion upon her part, and the facts which she states do not justify the conclusion. Here is the essential part of what she testified in regard to the conduct of her husband:

"For about the first two years of our married life we were very happy, but then the defendant began to grumble. The defendant is a man of very high temper, would at times get mad, and would at times go to bed as if he were sick, and at one time went to the home of his mother and stayed in bed a week or ten days claiming that he was sick. Since we have been married I have worked as a stenographer; have also done the housework, and have at times done the washing for the family. We have had no servant. I am now working as a stenographer. When we were married I was a widow, and had three children by my first husband; and the defendant promised to help educate my oldest daughter, Catherine, who is now nineteen years of age. When we were married the defendant was working and boarding in Atlanta, and after our marriage I went to Atlanta and boarded with him until the school which my daughter was attending was out, and then we rented a house. We later moved to Austell, where we lived about a year, the defendant in the meantime going back and forth to Atlanta to his work. He first worked for Oglesby Grocery Co., which position he quit without consulting me, and then obtained a posi-

tion at the Atlanta place of business of Mather Brothers, and I was employed by Mather Brothers in Austell. After I left my position there, we again went to Atlanta to live, first in an apartment; and then I purchased a home in Atlanta in which I am still living with my three children. In the early part of 1921, about February 1st, the defendant quit his position with Mather Brothers and secured a position as cashier of the Austell Bank at Austell, Ga., and returned to Austell, where he has been living since with his father and invalid sister, coming to see me in Atlanta at first most every week-end. Some of the time I would go out there for the week-end, so that we were together most every week. He hasn't been to my home since March of this year. [Plaintiff was testifying on July 21, 1923.] The defendant at one time kept a cook at his father's home in Austell; but when I came to Austell to his father's to spend a while, they discharged the cook. In March, 1921, the defendant executed the agreement, copy of which is attached to the petition as an exhibit. I have carried out my part of that agreement, but he has failed to do so. I have always tried to perform the duties of a faithful and affectionate wife, and gave the defendant no just cause to complain. For the last year or more of our married life together Mr. Perkerson never seemed happy or contented at home. He would complain and grumble a great deal. He told me at different times that he was going to quit me. However, he always came back, except the last time, when, about March 1st of this year, he left me and has not come back. The circumstances of his final leaving were as follows: He left early one Monday morning. The day and night before we had spent together at our home in Atlanta, and he had seemed very sullen. I got up early that morning as usual to get Mr. Perkerson off, for his train to Austell left Atlanta before daylight, and cooked his breakfast. He had always before sat down and eaten breakfast with me, but this time he stood up and ate with his hat on his head. Very little was said, and we had no quarrel. When he finished eating, I followed him to the door. He left without kissing me or otherwise bidding me good-bye. I stood on the steps watching him leave, .and as he passed out the gate, he called back that he was not coming back. He has not since been back. I gave him absolutely no cause or provocation for deserting me. I have paid about $1400 on the home which I purchased in Atlanta, and the payments on it each month

now amount to about $44. They were $40 per month to begin with, and the interest on it now brings them up to $44. I am the only dependence of my youngest daughter, Walterette, for support and education. I hope to put her through school. She has finished the tenth grade, and it will take three more years to complete the Girls· High School in Atlanta. After that, I hope to put her through the girls college at Decatur, which will take another four years. For the next seven years it will take all I can make on my salary as a stenographer to clothe, board, and educate my said minor daughter, which would leave nothing out of my own salary for my own support; and I have no other source of income. In my opinion it will take between $75 and $80 per month to support me, and I think that is a reasonable sum for my support."

As to the amounts which her husband had sent her, the wife testified as follows: "These checks which you present to me were sent to me by the defendant between the dates of February 14, 1921, and May of this year, aggregating $1679.83, and with the exception of the two which are made payable to Chamberlin-Johnson-DuBose Co., to pay on my account there, I received the cash on them. That amount of $1679.83 has been paid to me between those dates of February 14, 1921, and May of this year. I refused to accept the check for $25, payable to me and signed by the defendant, dated May 1st, 1923, which you present to me, for the reason that it was not large enough." This suit was brought July 7, 1923, and as late as May 17, 1923, the husband was writing the wife and entreating her to come and live with him. The agreement, marked "Exhibit A" and attached to the petition, stipulated that the husband should pay certain amounts monthly, and this agreement appears to have been substantially complied with by the husband.

The judgment of the court allowing temporary alimony and attorney's fees must be set aside because not authorized by the evidence. The conclusion which we have reached in this case is based upon the evidence in this record and well-considered decisions in our own reports, laying down the law applicable to facts like those here shown. We feel that it is unnecessary to cite decisions. Nevertheless it is not inappropriate to quote in this connection what has been said in some of the cases decided by this court. In the case of *Pace* v. *Pace,* 154 *Ga.* 712 (115 S. E. 65), it was held: "In this State the husband is the head of the family, and as such has

the right to fix the matrimonial residence without the consent of the wife; and the wife is bound to follow her husband, when he changes his residence, provided the change is made by him in good faith, and not from whim or caprice, or as mere punishment of the wife, or to a place where he does not intend to reside, or to a place where her health or comfort will be endangered. Hardenbergh *v.* Hardenbergh, 14 Cal. 654; Babbitt *v.* Babbitt, 69 Ill. 277; Boyce *v.* Boyce, 23 N. J. Eq. 346; Cutler *v.* Cutler, 2 Brewst. (Pa.) 511; Angier *v.* Angier, 7 Phila. (Pa.) 305; 15 Am. & Eng. Enc. Law (2d ed.), 812; *Sindall* v. *Thacker,* 56 *Ga.* 51; Civil Code (1910), § 2183. This rule is not altered by an antenuptial agreement to the contrary. Hair *v.* Hair, 10 Rich. Eq. (S. C.) 163. And this is especially true where the husband, who was 63 years old, had been a farmer all his life, was unskilled in any other trade, and who, after trying to live in a city and support himself, wife and her children, was unable to do so, because he was unable to obtain any work and incapable of earning a living in the city. . . Where the husband was unable to earn a living in town or city, for the reason above stated, and where he had a farm in a good community, upon which he could make a living for himself and wife and her minor children, to which home he had entreated his wife to come and live with him, which, a fair analysis of the evidence discloses, she refused to do, because of an antenuptial agreement between her and her husband, by which he was to take her from the country to a named town or city, upon the faith of which she married him; and where the husband could get at the utmost $175 per annum for rent of his farm, and where he had no other income or means of support than what he made on or derived from his farm, and where it does not appear that the husband had ever treated his wife cruelly, otherwise than failing to furnish her all of her support while living in the city, and none after her refusal to go and live with him on his farm, the refusal of the wife to live in his home on the farm was, in effect, her abandonment of him (Hair *v.* Hair, supra), although he left her, when she refused to go, for the purpose of living at his farm home; and such abandonment of the husband by the wife without just cause will defeat her recovery of alimony and attorney's fees under the Civil Code (1910), § 2986; *Fuller* v. *Fuller,* 108 *Ga.* 256 (33 S. E. 865); *Davis* v. *Davis,* 145 *Ga.* 56 (88 S. E. 566); *Brisendine* v. *Brisendine,* 152 *Ga.* 745 (111 S. E.

22). . . Under the circumstances, the grant of $30 per month to the wife as alimony, and $50 for attorney's fees was an abuse of discretion on the part of the trial judge."

In *Brisendine* v. *Brisendine* (supra), it was said: "Alimony will not be allowed to a wife who abandons her husband without just cause," citing *Fuller* v. *Fuller,* supra. Also: "This is a proceeding under the Civil Code (1910), § 2986, for the allowance of alimony and counsel fees, where the husband and wife are living in a bona fide state of separation. On the hearing the testimony of the wife clearly showed that she voluntarily abandoned her husband without just cause. It was therefore an abuse of discretion to allow her alimony and counsel fees."

In *Davis* v. *Davis* (supra), it was said: "Where no divorce suit is pending and alimony is applied for because the husband and wife are living in a bona fide state of separation, on a hearing for temporary alimony it is an abuse of discretion to allow alimony to the wife, where it is admitted that the husband provided everything he could for his wife, and a fair analysis of the evidence discloses no cruel treatment of the wife by the husband, and shows that the wife refused to live with the husband because of mutual antipathy between him and the wife's mother, and that the husband had prepared a furnished home and asked the wife to come to it, who refused to do so, assigning as her reason that she no longer loved him and did not wish to go with him." See also, in the same connection, *Ward* v. *Ward,* 144 *Ga.* 312 (87 S. E. 17); *Vinson* v. *Vinson,* 94 *Ga.* 492 (19 S. E. 898); *Ring* v. *Ring,* 118 *Ga.* 183 (44 S. E. 861, 62 L. R. A. 878); *Stoner* v. *Stoner,* 134 *Ga.* 368 (67 S. E. 1030). *Judgment reversed. All the Justices concur.*