PORTER *v.* CHESTER.

HAWKINS, Justice. Donald Porter instituted a writ of habeas corpus in Chattahoochee Superior Court on March 13, 1951, against Elizabeth Chester (formerly Elizabeth Porter), seeking to recover custody of their nine-year-old daughter, Sandra Lee Porter. The petition alleged that the plaintiff was entitled to custody of the minor child by virtue of a decree from the Circuit Court of Dade County, Florida, dated March 10, 1947, which awarded full custody and control of the minor child to the plaintiff. The petition further alleged that the defendant stole the child away from the possession of the petitioner without his knowledge and consent, that he has demanded from the defendant possession of the child, which demand has been refused, and the plaintiff is further entitled to custody and possession by virtue of the fact that he is the father of the child and has not released his rights in the matter. The defendant filed an answer to the petition on March 17, 1951, in which she denied any knowledge of a decree rendered by the Circuit Court of Dade County, Florida, and denied all other allegations of the petition. For further plea and answer the defendant alleged that she held the minor child under a custody award made by the Circuit Court of Dallas County, Alabama, on February 8, 1947, alleging further that the plaintiff, on or about February 15, 1947, took the minor child to the State of Florida without consent of the defendant for the purpose of attempting to confer jurisdiction on the Florida court to award custody to him. Upon this petition and answer the matter proceeded to trial before the trial judge, who, after hearing testimony by the plaintiff and the defendant, and from the child, awarded custody of the child to the defendant. To this judgment the plaintiff excepts on the ground that the award of the child by the court to the defendant

was an abuse of discretion, and also assigns error in the bill of exceptions upon certain rulings as to the admission and exclusion of evidence. *Held*:

1. The first assignment of error complains of the exclusion of the answer of the plaintiff as to the relationship existing between him and the defendant when they were living together as husband and wife, and before they were divorced, on the objection of counsel for the defendant that such testimony referred to matters occurring prior to the divorce, which ruling is assigned as error because at the time the ruling was made no divorce decree had been introduced in evidence. This assignment is without merit, since in response to a question by the court, the plaintiff admitted that there had been a divorce and he had married again. *Kniepkamp* v. *Richards,* 192 *Ga.* 509 (8) (16 S. E. 2d, 24).

2. The second assignment of error, complaining of the sustaining of the objection to a question propounded by counsel for the plaintiff to a witness on direct examination, presents no question for determination, since it is not disclosed by the assignment of error that the court was then informed as to what the expected answer of the witness would be. *Griffin* v. *Henderson,* 117 *Ga.* 382 (2) (43 S. E. 712); *Bowden* v. *Bowden,* 125 *Ga.* 107 (1) (53 S. E. 606); *DeLoach* v. *Sikes,* 166 *Ga.* 39 (3) (142 S. E. 150).

3. Since the record in this case discloses that, at the time the plaintiff entered the armed forces in 1945, he and the defendant had been living as husband and wife in Miami, Florida, thus fixing the domicile of the defendant in that State (Code, § 79-403; *Perkerson* v. *Perkerson,* 157 *Ga.* 589, 593, 122 S. E. 53; *Pace* v. *Pace,* 154 *Ga.* 712, 115 S. E. 65), and since the plaintiff was attacking the defendant's decree of divorce granted by the courts of the State of Alabama upon the ground that the court was without jurisdiction, it was not error to overrule the objection of counsel for the plaintiff to the testimony of the defendant as to certain alleged cruel treatment inflicted on her by the plaintiff shortly before he entered the Army and after he returned therefrom, in order to show her right to establish her separate domicile in the State of Alabama, and thus confer jurisdiction upon that court, where such evidence was admitted solely for that purpose. The further objection to the evidence as a whole, consisting of some three and one-half typewritten pages of questions and answers, upon the ground that it was hearsay, without pointing out what portion of the evidence was objected to upon this ground, and where all of the testimony was not subject to the objection urged, was properly overruled. *Taintor* v. *Rodgers,* 197 *Ga.* 872, 873 (2) (30 S. E. 2d, 892).

4. In the view we take of this case, the question of the validity of the divorce decrees granted to the plaintiff and the defendant by the courts of the States of Florida and Alabama, respectively, in each of which the custody of the child here involved was sought to be awarded by the court, is not material to a decision of this case, and the admission in evidence of either or both of them, even if erroneous, could not be such material error as to require a reversal of the judgment of the trial court. It has been uniformly held by this court that, even though the legal right to the custody of a child has been adjudicated by a court of

competent jurisdiction, either of this State or of a foreign State, the court may nevertheless thereafter, in a habeas corpus proceeding such as this, exercise a sound legal discretion as to the custody of the child if it be shown that new and material conditions substantially affecting the interest and welfare of the child have arisen since the rendition of such former judgment or decree. *Drake* v. *Drake*, 187 *Ga.* 423 (1 S. E. 2d, 573); *Kniepkamp* v. *Richards*, 192 *Ga.* 509 (supra); *Willingham* v. *Willingham*, 192 *Ga.* 405 (15 S. E. 2d, 514). In the trial of such a case between the parents of the child, the question as to whom the child shall be awarded to is entrusted to the sound legal discretion of the trial judge, who sees and hears the parties, the witnesses, and the child, and who necessarily has superior opportunity for determining correctly the issues involved, chief of which is the best interest and welfare of the child, and it must be a flagrant abuse of that discretion which will authorize a reviewing court to interfere. *Lindsey* v. *Lindsey*, 14 *Ga.* 657 (2); *Weathersby* v. *Jordan*, 124 *Ga.* 68 (2) (52 S. E. 83); *Good* v. *Good*, 205 *Ga.* 112 (52 S. E. 2d, 610).

5. In this case the evidence discloses that both the plaintiff and the defendant have remarried since the grant of their respective divorces; and while this would not within itself constitute such a change in condition adversely affecting the welfare of the child as would require a change of its custody (*King* v. *King*, 202 *Ga.* 838, 44 S. E. 2d, 791), the court was authorized to consider this fact, along with all of the other evidence. *Kniepkamp* v. *Richards*, 192 *Ga.* 509 (supra). The trial court was authorized to find that each of the parties had at different times surreptitiously taken the child from the other; too, that in 1948, when the mother went to Miami to see the child, the father sent the child into another State with his second wife so the mother could not see her; that, in the fall of 1948, the condition of the health of the plaintiff's mother, who is an invalid and was helping to care for the child, became such that she could not help take care of her; and that both the plaintiff and his present wife are employed, the wife absent from home from 8:30 in the morning to 3:30 in the afternoon, and the plaintiff from 8 o'clock in the morning until 5 o'clock in the afternoon, five days a week. The plaintiff testified that he married his present wife April 3, 1948; that, in October, 1948, "Ruth, my present wife, and I were trying to get acquainted together, the three of us—was such a difficult job we decided that Sandra [the child in question] would be better off finishing the school term with her mother so that it would give us a chance to get accustomed to each other. I sent the child to Fort Bragg, North Carolina, to join its mother. The child left Miami in October, 1948, with my consent in order that my wife and I might adjust ourselves together, the three of us, my wife, child, and I were having some trouble in adjusting ourselves." It appears that the child spent the remainder of the school term, 1948-49, with her mother, and returned to the plaintiff in the spring of 1949, at his request; that she was again sent to her mother in 1949, spent the school term of 1949-50 with her mother, and returned in the spring of 1950, the mother contending that this was done under an agreement entered into between the parents that the plaintiff would have the custody of the child during the summer months and the defendant would have her custody

during the school term; and that the plaintiff failed to comply with the agreement and return the child in the fall of 1950. The plaintiff denied any such agreement, but admitted refusing to return the child to her mother in the fall of 1950. The child testified that she desired to remain with her mother. Under these circumstances and under the authorities above cited, we cannot say that it was a flagrant abuse of discretion on the part of the trial court to hold that "the child has been moved around enough, it is time for it to settle down," and to award the custody to the mother. *McDowell* v. *Gould*, 166 *Ga.* 670 (144 S. E. 206); *Barlow* v. *Barlow*, 141 *Ga.* 535 (81 S. E. 433); *Woodland* v. *Woodland*, 153 *Ga.* 202 (111 S. E. 673).

*Judgment affirmed. All the Justices concur.*

No. 17528. SUBMITTED JULY 9, 1951—DECIDED SEPTEMBER 10, 1951.

*W. Stanford Willis*, for plaintiff.
*Foley, Chappell, Kelly & Champion*, for defendant.