20079, 20089. STURKIE *v.* SKINNER *et al;* and *vice versa.*

ARGUED MAY 13, 1958—DECIDED JUNE 4, 1958—REHEARING
DENIED JUNE 23, 1958.

*Troutman, Sams, Schroder & Lockerman, Robert L. Pennington, David L. Mincey, E. F. Taylor,* for plaintiff in error.

*Martin, Snow, Grant & Napier, Miller, Miller & Miller,* contra.

CANDLER, Justice. Dr. H. Ray Sturkie, Jr., brought habeas corpus against John V. Skinner and Mrs. Mary Miller Skinner to obtain custody and control of his daughter, Marilyn Stewart Sturkie, who was born October 2, 1954, alleging illegal custody, control and detention of her by the defendants, her maternal grandparents. The petition also alleges that the applicant has not surrendered or in any way forfeited his parental right to the custody and control of his child. This allegation was positively denied by the defendants' response and, further responding to the petition and to the writ, they in substance allege that the applicant is an unfit person morally to have custody and control of the child; that he has failed to provide her with the necessities of life; and that he has by his conduct forfeited his right to have custody and control of her. After a lengthy hearing, Honorable Benning M. Grice as Judge of the Juvenile Court of Bibb County, Georgia, awarded custody and control of the child to the respondents and remanded her into their possession. The applicant excepted to that judgment and to several antecedent rulings

which were made during the trial and sued out a direct bill of exceptions to this court. The defendant by a cross-bill of exceptions assigned error on an order approving the brief of evidence.

In the brief for the plaintiff in error it is stated and argued that a judgment of reversal should be rendered by this court because the trial judged erred (1) in denying the plaintiff the right to have produced at the commencement of the trial, and in response to a notice timely given for their production, all records which the defendants possess or control showing the amounts of money they paid or which were paid for them by others, to certain private investigators in Birmingham, Alabama, for use as evidence pertinent to the plaintiff's cause; (2) in admitting or allowing in evidence the contents of statements, oral and written, which his wife, Mrs. Marilyn Sturkie, made to several different persons, since such evidence was purely hearsay in character; (3) in permitting evidence to be introduced showing or tending to show the cause of his wife's death since that question was not a proper one for the court to hear and determine in deciding the issue made by the pleadings; and (4) in finding from the evidence that the plaintiff had by his misconduct forfeited his parental right to custody and control of his minor daughter since there was no evidence to authorize such a finding and such a judgment. These questions will be considered and disposed of in the order of their statement.

■ The first assignment of error complains of the court's refusal to compel the defendants to produce certain records showing expenditures made by them, or for them, to private investigators in Birmingham, Alabama, for services rendered by them in an effort to ascertain the cause of Marilyn Sturkie's death. Touching this, the record shows: The plaintiff, pursuant to Code § 38-801, timely notified the defendants in writing to produce and have at the trial all records in their possession or control "whether by canceled checks, money receipts, ledger, journal or other book entry of any sort" showing the amounts of money or other things of value paid by them, or for them, to private investigator Fred J. Bodeker of Birmingham, Alabama, and all other private investigators employed by them in Birmingham from April 30, 1957, through the date of the trial. As to the

materiality of those records for any purpose pertinent to the cause, the plaintiff did not, so far as the record shows, comply with Code § 38-806 which provides: "Before the notice provided for in the preceding section [§ 38-801] shall be available, the party giving it, or his agent, must make oath (or his attorney state in his place) that he has reason to believe that the paper required is or has been in existence; that it is in the possession, power, or control of the person notified; and that it is material to the issue." And strict compliance with these provisions is required before the court is authorized to compel the opposite party or parties to produce the records specified in the notice. *Ga. Iron & Coal Co.* v. *Etowah Iron Co.*, 104 *Ga.* 395 (4) (30 S. E. 878). See also *Bryan* v. *Walton*, 14 *Ga.* 185, and *Carlton* v. *W. & A. R. Co.*, 81 *Ga.* 531 (7 S. E. 623). In this case there is no contention that the plaintiff made the required oath, and a recital in the bill of exceptions that the plaintiff, when his case came on for trial, insisted on a response to his notice to produce, does not amount to an allegation that his counsel stated in his place that the records called for were for any reason material to any issue in the case. Having thus omitted to make the proper showing for their production, the court's failure to compel the defendants to produce the records specified in the notice was not erroneous. Hence, this assignment of error is without merit. Compare *Carrington* v. *Brooks*, 121 *Ga.* 250 (1) (48 S. E. 970). He who alleges error has the burden of showing it affirmatively by the record. *Hall* v. *State*, 202 *Ga.* 619 (2) (44 S. E. 2d 234), and citations.

■ On the trial of this case several witnesses for the defendants were permitted to relate the contents of oral statements which, according to their testimony, Mrs. Marilyn Sturkie, the deceased wife of the plaintiff, made to them during the latter part of her lifetime. The court also allowed in evidence several letters which the deceased Mrs. Sturkie had written to her parents (the defendants) and to a Mrs. Hugh Gaston during the last few months of her life. He also admitted in evidence the sheets of a calendar from February, 1956, through October of that year with pencil notations on them which Mrs. Sturkie had made and about which Mrs. Skinner testified. All of this was admitted and allowed in evidence over an objection timely made

to each that it was purely hearsay evidence having no probative value, but in character highly prejudicial to the plaintiff's case since each tended to show his unfitness as a parent to have custody and control of his child. But the record shows that all of this testimony was admitted by the court for the limited purpose of showing Mrs. Sturkie's mental condition or her state of mind at the time thereby referred to. Error is assigned separately on each of these rulings, and as to each assignment, we find no error. The trial of this case lasted 21 days and the evidence covers 3328 pages of the record. The plaintiff contended throughout the trial that his wife because of a distorted mind committed suicide; the defendants insisted that the plaintiff killed her because he was in love with another woman and for that reason wanted to get rid of her. The plaintiff spent many hours on the stand testifying as to mental aberrations of his wife and he minutely detailed the most intimate relations of their married life in his attempt to demonstrate manifestations of those traits. His evidence which covers 883 pages describes his wife as a "manic depressive" with paranoid tendencies—or as a person who would be inclined or likely to take her own life. By his testimony he introduced himself to the court as a faithful husband and a devoted father who had been falsely charged with marital infidelity by a wife insanely jealous of another woman without any cause therefor. According to his testimony, the accusations which his wife made to him as to and respecting his marital unfaithfulness were wholly untrue and resulted entirely from her impaired intellect, and the accusations shown by the evidence to which these assignments of error relate, are in substance and in character not materially different from the ones she made to him and about which he and his witnesses testified. As previously pointed out, the plaintiff contended that his wife during the latter part of her life was a manic depressive with paranoid tendencies, and we think oral or written declarations made by her during that period of time were admissible either for the purpose of proving or disproving that issue. See *Purser* v. *McNair*, 153 *Ga.* 405 (112 S. E. 648); *Ezell* v. *Mobley*, 160 *Ga.* 872 (129 S. E. 532); and 28 Am. Jur. 759, § 132, where the author says: "It is well settled that in the determination of the mental condition of a person, his conversation, acts, declara-

tions, and conduct in general may be shown at the trial, upon the theory that such proof is frequently decisive upon the question of sanity and insanity."

■ The Juvenile Court of Bibb County, Georgia, was created by an act which the legislature passed in 1951 (Ga. L. 1951, p. 291), and it was vested with jurisdiction over any child under seventeen years of age living or found within the county. When the parents or the surviving parent of such a child have or has become unfit by reason of conduct to have and retain custody and control of it, the judge of the juvenile court under section 27 of the act has jurisdiction and power to transfer the permanent care, control and custody of such child to some other person, agency or institution, and may terminate all rights of such parents or parent with reference to such child. The legislature amended the juvenile court act of 1951 at its session in 1956 (Ga. L. 1956, p. 69) by adding a new section to it which in part reads: "All laws and provisions of laws inconsistent with or repugnant to the Juvenile Court Act, approved February 19, 1951, . . . shall be considered and held to be inapplicable to the cases arising under the Juvenile Court Act . . ." If the father of the minor involved in this case had by his conduct become an unfit person to have custody and control of her, the judge of the juvenile court unquestionably had jurisdiction and power to transfer custody and control of her to some other person, agency or institution; and in determining that issue, he was vested with a discretion which this court has no right to control unless it was manifestly abused by him. *Porter* v. *Chester*, 208 *Ga.* 309 (66 S. E. 2d 729); *Hodges* v. *Hodges*, 77 *Ga. App.* 86 (2) (47 S. E. 2d 823). The mother of the child, as the record shows, died in Birmingham, Alabama, on April 28, 1957—she was dead when Dr. Sturkie on that day brought her body to Carraway Hospital at 6:35 a.m. and an autopsy revealed that a sufficient amount of mercuric mercury had been taken into her stomach to produce her death in from one to two hours after it was ingested. In determining the fitness of the father in this case to have custody and control of his young daughter there is, of course, no merit in his contention that the court erred in admitting and considering evidence which the defendants offered in support of their contention that he murdered his wife, the

mother of the child involved. While we have carefully examined and considered all of the evidence which the trial judge heard, we shall not undertake to set it out in this opinion even in substance. It is sufficient to say that the trial judge in this case, from all of the facts and circumstances revealed by the record, was authorized to find that the father was an unfit person to have custody and control of his child and had therefore forfeited his parental right of custody. And since the evidence shows that the defendants are persons of excellent character and that they are able and willing to properly care for and rear the child involved, the trial judge did not err in awarding custody and control of her to them.

*Judgment affirmed on the main bill of exceptions. Cross-bill of exceptions dismissed. All the Justices concur. In the judgment on the main bill of exceptions, Duckworth, C. J., and Hawkins, J., concur specially; and Head, J., concurs in the result.*

DUCKWORTH, Chief Justice, concurring specially. In the motion for a rehearing it is sought, for the first time, to challenge the constitutionality of the Juvenile Court Act upon which the opinion is based. It is settled by the decisions of this court beyond any doubt that such questions can not be thus raised. But it is my opinion that the construction the opinion places on that act does render it unconstitutional. I think it beyond the constitutional power of the General Assembly to vest in the numerous and different juvenile court judges the power to deprive a parent of the custody of its child when he thinks it should be done, which is substantially what the act provides. With the act thus construed, retention of custody by parents would depend upon as many different but unknown grounds as there are juvenile-court judges. No two of them are required by this law to act similarly upon any identical ground.

However, I concur in the judgment of affirmance because it is the duty of the court in construing a law to give it that construction which renders it constitutional rather than unconstitutional if it will stand such construction. Therefore, I construe this act in pari materia with Code §§ 74-108, 74-109, and 74-110, thereby giving it the meaning that, if the juvenile judge finds from evidence that the parent is unfit as tested by these sections to have

custody, he may award it to another, and I think that the evidence here authorized him to do so. Those sections confer the lawful right of custody upon the parents, and then expressly state the various means whereby that custody may be lost. This court held in *Bond* v. *Norwood,* 195 *Ga.* 383 (24 S. E. 2d 289), that the parent's right of custody could be taken away only on one or more of those grounds. I can not agree that so long as we have our Constitution the legislature can deprive free people of legal rights by men rather than by law. I am authorized to state that Mr. Justice Hawkins concurs in this special concurrence.