21313.   YANCEY v. WATSON *et al.*

SUBMITTED JULY 11, 1961—DECIDED SEPTEMBER 7, 1961—
REHEARING DENIED SEPTEMBER 25, 1961.

*Myers & Fortson, Warren C. Fortson,* for plaintiff in error.

*Smith & Undercofler, Hiram K. Undercofler, D. Warner Wells,* contra.

ALMAND, Justice.   The judgment under review is one remanding the custody of the petitioner's four year old daughter to her maternal grandparents in a habeas corpus suit.

Tom Yancey, Jr., on March 6, 1961, brought an action of habeas corpus seeking custody of his four year old child against George and Bernice Watson, the child's maternal grandparents, on the ground of illegal detention.   The case was heard on March 23, 1961, with the parties present.   Evidence was adduced from several witnesses, and on April 18, 1961, the trial judge remanded the custody of the minor child to the maternal grandparents.   On April 19, by request of counsel for the plaintiff, the court clarified its order and stated that said order was based upon the following grounds: "1. The court found from the testimony that the plaintiff released his parental rights to his minor child to the defendants by a voluntary contract, which was accepted by the defendants and acted on by the defendants for a period of approximately one year. 2. The court found that it was in the best interest of said child that her custody be remanded to the respondents." To the order remanding custody of the minor child to the maternal grandparents the petitioner excepts, and assigns same as error.

The evidence brought out at the hearing showed the following: Tom Yancey, Jr., the petitioner, testified that he was the father of the minor child and the sole surviving parent.   That he had been convicted of the involuntary manslaughter of his wife, the mother of the minor child, and had been sentenced from one to

five years. He was paroled from prison in November, 1960, after having served 9 months and 18 days. He lost custody the night he was arrested and charged with the murder of his wife. While in prison he wrote a letter to the maternal grandparents which in part said, "I told Mama that I wanted to let Joy stay with you all." He further testified that since his release in November he had worked part time with his father and had recently obtained steady employment averaging about $50 to $60 per week. He had been able to keep up the payments on his house in Dry Branch, Georgia, had become a Christian, going to church regularly, had given up drinking, and was doing everything he could to reform. He said that he never intended that the child should stay with the Watsons indefinitely but only until he saw what happened. At the time of the hearing the petitioner was living with his mother and father.

The petitioner introduced evidence by two witnesses that he is now leading a Christian life, participating in church work, has given up drinking, and is making every effort to lead a life which would be consistent with providing a good home for his child.

The evidence for the respondents consisted of the testimony of Mrs. Bernice Watson, one of the respondents, and the letter written by the petitioner to Mrs. Watson. She testified to the effect that the reason she did not give the child back to the petitioner after he was placed on parole was that she didn't think he was capable of raising her. Before the death of her daughter the petitioner had pitched terrible fits, knocked her daughter down, grabbed her around the neck, grabbed the baby while drunk and flew up and down the road in his car. He left her daughter alone at night. She further testified that she had not refused to allow him to visit the child as long as he would come there and behave himself. She understood from the letter and the surrounding events that he had released the child to her.

It is urged on the behalf of the petitioner that there is no showing that parental control has been released by the father; and therefore, the judge erred in remanding the custody of the child to the maternal grandparents. On the other hand counsel for the respondents urge that the language in the letter, "I told

Mama that I wanted to let Joy stay with you all," and the surrounding circumstances constitute a voluntary relinquishment of the custody of the child to the respondents. The respondents further argue that even if the letter did not amount to a voluntary relinquishment of the child's custody to them that the trial judge did not err in awarding custody of the child to them in view of *Code* § 50-121 which provides, "In all writs of habeas corpus sued out on account of the detention of a wife or child, the court, on hearing all the facts, may exercise his discretion as to whom the custody of such wife or child shall be given, and shall have power to give such custody of a child to a third person."

In order for a contract for voluntary relinquishment of a child's custody to a third person to be valid, such agreement must be clear, definite and unambiguous. *Miller v. Wallace*, 76 Ga. 479 (2c) (2 ASR 48); *Looney v. Martin*, 123 Ga. 209 (51 SE 304); and *Wilkinson v. Lee*, 138 Ga. 360 (1b) (75 SE 477, 42 LRA (NS) 1013). That the contract must be definite and clear does not mean that the evidence must be undisputed. In the case sub judice the language of the letter is not such that it can be said to be clear, definite and unambiguous so as to amount to a contract to release the right of custody of the child to a third person on a permanent basis as contended by the respondents. Compare *Waldrup v. Crane*, 203 Ga. 388 (46 SE2d 919).

In all cases of habeas corpus to determine the custody of a child, the welfare of the child is the paramount consideration. *Miller v. Wallace*, 76 Ga. 479, supra. It is true that the father has the legal right to have the custody of his infant child in a general sense. But this is not due to any absolute right of the father, but for the benefit of the infant, the law presuming it to be for its interest to be under the nurture and care of his natural protector, both for maintenance and education. The right may be relinquished or forfeited by contract, by his bad character and immoral habits, or by his misfortune in not being able to give it proper care and support.

When the court is asked to lend its aid to put the infant into the custody of the father, and to withdraw him from other persons, it will look into all the circumstances and ascertain what

is best for the interest and welfare of the infant. See *Walker v. Jones*, 1 Ga. App. 70 (57 SE 903).

Where, as in the instant case, the father of the infant has been convicted of the involuntary manslaughter of his wife, the infant's mother, it is a mistake to suppose the court is bound to deliver the infant over to her father. It is necessary to determine the status of the petitioner at the present time. He was released from prison in November 1960, after having served 9 months and 18 days of a one-to-five year sentence. Such release was not final but placed the petitioner on parole. "Such parolee shall remain in legal custody of the Board until the expiration of the maximum term specified in his sentence or until he is pardoned by the Board." *Code Ann.* § 77-515. While the commission of a crime such as involved here might not absolutely forfeit the father's right to the custody of his infant for all time, it is clear that at the time of the hearing he was a prisoner on parole which makes him a person unfit to care for his child. Such a condition must be presumed to continue until a reformation is shown to have taken place. Compare *Sturkie v. Skinner*, 214 Ga. 264 (3) (104 SE2d 417).

Although there is evidence that the petitioner is now making every effort to reform, it can hardly be said that reformation can be proved while a person is serving a jail term even though out of prison on parole. It is not enough to prove a desire to reform nor is it sufficient to prove acts of reformation. It is necessary to go further and prove an actual reformation. The petitioner has only recently been paroled, and the alleged reformation has not passed the age-long test of time.

In such a case it is the duty of the court to look to the welfare of the child and make a determination as to where his interests may best be protected and furthered. In this case the infant is not with complete strangers but with her maternal grandparents. At the hearing of this case there was no attack made upon the fitness of the respondents to care for the child nor was there any evidence of bad treatment of the child.

Accordingly, the trial judge did not abuse his discretion in remanding the custody of the child to the respondents at this time.

*Judgment affirmed. All the Justices concur, except Duckworth, C. J., who concurs specially.*

DUCKWORTH, Chief Justice, concurring specially. In view of the conflicting evidence in this record with reference to whether or not the father had voluntarily relinquished his minor child to the custody of the maternal grandparents, there was sufficient evidence to authorize the finding of the lower court that the plaintiff had released his parental rights to his minor child under *Code* § 74-108 (1), and the court did not abuse its discretion in remanding the custody of the minor child to the respondents. For this reason I concur in the judgment of affirmance only, but I dissent from all the rulings made in the opinion that are in conflict with other full-bench decisions of this court. See, for example, *Bond v. Norwood*, 195 Ga. 383 (24 SE2d 289) ; *Byers v. Loftis*, 208 Ga. 398 (1) (67 SE2d 118) ; and the special concurrence by Mr. Justice Hawkins and myself in *Sturkie v. Skinner*, 214 Ga. 264 (104 SE2d 417), at page 270.