## 43619. HIGGS v. THE STATE.
### (351 SE2d 448)

WELTNER, Justice.

The evidence in this case indicates that on June 29, 1984, shortly after midnight, Rollison Higgs shot and killed John Scroble with a handgun.[1] The shooting took place in a parking area adjacent to a restaurant. Just prior to the shooting, the victim Scroble and Frankie Higgs, the former wife of the defendant, were seated in the front seat of an automobile that Frankie Higgs had driven to the parking area. Faye Clark, who testified that she had known the defendant and his former wife "all my life," was close to the automobile. She related that as she started to walk toward the restaurant she saw Higgs approach the automobile in which Scroble was seated, open the door on the passenger's side, and heard him order Scroble from the car. At that time, Frankie Higgs hastily exited the car from the driver's side. Almost immediately thereafter the witness Clark heard gunfire. While Clark testified that she did not see a pistol at any time, she was certain that no one but Higgs was near Scroble when the shot was fired. Testimony of a firearms expert established that the weapon that caused Scroble's death had been fired from within six to twelve inches of the victim's body.

Clark entered the restaurant almost immediately after the shooting and telephoned the police. When she returned to the scene, Higgs had left. While Clark was telling Frankie Higgs about making the telephone call, she saw Scroble lunge from the car and fall, face down, to the pavement.

Investigator Moses of the Georgia Bureau of Investigation assisted in the investigation of the killing. At some time between 2:30 and 3:00 o'clock a.m., Moses arrived at the crime scene. Later that

---

[1] Higgs was indicted on February 26, 1985. He was found guilty and sentenced on January 21, 1986. The transcript was certified by the court reporter on February 18, 1986. Higgs' motion for new trial was filed on February 11, 1986, and was denied on May 9, 1986. Higgs filed his notice of appeal on June 3, 1986. The case was docketed in this court on June 20, 1986, and was argued on September 10, 1986.

morning he interviewed Frankie Higgs, after she had an opportunity to meet with and to be advised by her lawyer. According to Moses, Mrs. Higgs told him that she saw her former husband shoot Scroble with a pistol, and then disappear.

Higgs was sought by law enforcement officials, but was not found. At about 8:30 a.m. on that day, he surrendered himself to the sheriff's office. No murder weapon has been located.

Higgs was released on bond on July 1, 1984. That same day, he and his former wife resumed cohabitation, and were remarried on December 6, 1984. At pre-trial hearings held in February and October 1985, Frankie Higgs asserted her right not to testify against her husband. At the trial of the case, over objection of defendant, investigator Moses was allowed to testify as to what Frankie Higgs had told him concerning the killing.

1. Higgs attacks the guilty verdict on the grounds of insufficiency of the evidence. The evidence was sufficient to support the jury's verdict of guilty under *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), even without considering investigator Moses' testimony concerning Frankie Higgs' statement.

2. Higgs claims error in the trial court's admission of the testimony of investigator Moses as to Frankie Higgs' statement to him. The trial court ruled, on pre-trial motion, that Frankie Higgs could not be compelled to testify when she invoked the marital privilege, but that her out-of-court statement was admissible as an exception to the hearsay rule.

3. Frankie Higgs did not testify. Her knowledge of the killing was imparted to the jury by investigator Moses, who related what she had told him shortly after the homicide. This testimony, as hearsay, normally would be inadmissible. However, OCGA § 24-3-1 (b) provides that "hearsay evidence is admitted in specified cases from necessity." OCGA §§ 24-3-3 through 24-3-14 enumerate twelve types of hearsay that are admissible as exceptions to the hearsay rule. "Is this specification of cases in which hearsay evidence is admissible exhaustive and exclusive of all other cases? We think not." *Rea v. Pursley*, 170 Ga. 788, 793 (154 SE 325) (1930) (wherein we held that statements of a type not expressly mentioned in the Code were admissible). The exceptions in the Code in effect in 1930 are virtually identical to the current statute. "The two underlying reasons for any exception to the hearsay rule are a necessity for the exception *and a circumstantial guaranty of the trustworthiness of the offered evidence — that is, there must be something present which the law considers a substitute for the oath of the declarant and his cross examination by the party against whom the hearsay is offered. . . ."* *Chrysler Motors*

*Corp. v. Davis*, 226 Ga. 221, 224 (1) (173 SE2d 691) (1970).[2] See also *Irby v. Brooks*, 246 Ga. 794 (273 SE2d 183) (1980).

4. In this case, Frankie Higgs was unavailable as a witness because of her remarriage, after the killing, to Higgs, and because of her refusal to testify against him. OCGA § 24-9-23. There was, indeed, a "necessity" that the finder of fact be acquainted with the statements of the *only* eyewitness to the very act of homicide.

5. The trustworthiness of Frankie Higgs' statement can be found in the following particulars: (a) Frankie Higgs consulted with her attorney before making the statement; (b) the statement was made within hours of the killing in the course of an official investigation; (c) at no time after the statement was made did Frankie Higgs disavow her statement, or claim that it was inaccurate or untruthful; (d) Frankie Higgs testified prior to trial that she was refusing to testify because she loved her husband; (e) she did not testify contrary to her statement.

Under these circumstances, the trial court was correct in ruling that investigator Moses' statements were admissible as an exception to the general hearsay rule.

6. Higgs contends that the introduction of the hearsay evidence was a violation of his right of confrontation under the Sixth Amendment to the Constitution of the United States, and under Art. I, Sec. I, Par. XIV of the Constitution of Georgia of 1983. Higgs does not contend that he was denied the right to cross-examine investigator Moses, and the record reflects a vigorous cross-examination concerning all phases of his investigation. Rather, he insists that he was denied an opportunity to cross-examine his *wife* relative to her statements to the investigator.

7. Confrontation in a criminal trial includes the right to ask questions and secure answers from the witness confronted. *Lingerfelt v. State*, 235 Ga. 139 (218 SE2d 752) (1975). However, the United States Supreme Court has not interpreted "confrontation" to signify the exclusion of every hearsay exception, and has provided the following method to resolve confrontation challenges based on the admission of hearsay testimony: "The Confrontation Clause operates in two sepa-

---

[2] Compare Fed. Rules Evid. Rule 803 (24), 28 USCA: "Other exceptions. A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant."

rate ways to restrict the range of admissible hearsay. First, in conformance with the Framers' preference for face-to-face accusation, the Sixth Amendment establishes a rule of necessity. In the usual case (including cases where prior cross-examination has occurred), the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant. [Cits.] The second aspect operates once a witness is shown to be unavailable. Reflecting its underlying purpose to augment accuracy in the factfinding process by ensuring the defendant an effective means to test adverse evidence, the Clause countenances only hearsay marked with such trustworthiness that 'there is no material departure from the reason of the general rule.' " *Ohio v. Roberts*, 448 U. S. 56, 65 (100 SC 2531, 65 LE2d 597) (1980).

The admission of hearsay statements in this case did not violate Higgs' rights of confrontation.

*Judgment affirmed. All the Justices concur.*

### DECIDED JANUARY 15, 1987.

*Charles W. Cook, Wilmer L. Salter, Jr.,* for appellant.
*Richard A. Malone, District Attorney, William H. McClain, Assistant District Attorney, Michael J. Bowers, Attorney General, Dennis R. Dunn, Assistant Attorney General,* for appellee.