A89A0806. POWELL v. THE STATE.
(386 SE2d 54)

BIRDSONG, Judge.
Doyle E. Powell appeals his conviction for forgery involving a $6,550 check passed upon the account of H. B. Griffith.

Powell was an attendant at the nursing home where Griffith lived. Griffith had lent Powell $1,800 a few days before this $6,550 check was negotiated. The $6,550 check was made out to Lonnie Brown; Brown cashed it that day on August 1, 1986. Investigation o

Brown led to the appellant Powell as suspect; Brown said Powell signed the check and made it out to him. Brown kept about half of the money. Appellant Powell admitted being with Lonnie Brown on August 1, but denied any knowledge of or participation in a forgery. Evidence of a similar transaction was admitted showing that in 1984, while employed as a guard at the Gwinnett County Correctional Institute, appellant had obtained a check from an inmate who had recently inherited a large sum of money; appellant then had a friend cash the check for $3,650. Appellant pled guilty to the offense of forgery in that instance.

In the trial of this case the trial court, over objection for hearsay, admitted in evidence the transcribed testimony of Griffith at the earlier probation revocation hearing, and the affidavit of forgery executed by Griffith prior to the investigation and arrest. Appellant contends the trial court erred in ruling Griffith was unavailable to testify at trial due to Griffith's state of mind and infirmity, thus denying appellant his Sixth Amendment right to confrontation. He complains, moreover, that Griffith's transcribed testimony and affidavit were further inadmissible because appellant had not been represented by counsel at the probation revocation hearing and thus was denied the right to effective cross-examination and confrontation at that hearing which rendered the hearsay evidence doubly unreliable. *Held*:

1. The State and appellant have much belabored the rectitude of the trial court's ruling that Griffith was unavailable to testify, as well as the standards of law permitting such hearsay evidence. See *Higgs v. State*, 256 Ga. 606 (351 SE2d 448). But more to the point, we find that in any event there was nothing in either the forgery affidavit or Griffith's transcribed revocation testimony that was incriminatory of appellant. Further, appellant himself cross-examined Griffith at the revocation hearing, and his questioning was fully adequate to meet any negative implication in the witness' testimony.

The affidavit on its face does no more than state that a check had been issued on Griffith's account and that he did not execute the check or authorize its execution, and that it was a forgery. The affidavit was sworn under oath and notarized; particularly in Griffith's absence the affidavit was an essential element of proof of the crime, and hence met the test of necessity. See *Higgs*, supra.

. Moreover, the affidavit is devoid of reference, direct or indirect, to appellant or anyone else as a suspect. There was nothing in it to harm appellant. Appellant does not deny the check was a forgery but merely says he had nothing to do with it. Particularly since the affidavit cast no blame on appellant, there was nothing in it to be confronted.

As for the testimony of Griffith given at the revocation hearing, which was recited in this trial by the court reporter who had wit-

nessed and transcribed it, there was nothing in it directly incriminating appellant. Griffith stated that he "had the misfortune of meeting the gentlemen [appellant]" when Griffith was in the nursing center while appellant was an orderly there; that he "presume[d]" appellant had access to his room at the nursing center, since "[h]e had access to all of [the rooms], as far as I know"; and that appellant had been in his room on some occasion; and that he lent appellant some money by check, because he seemed a nice fellow. Griffith was asked on direct if appellant had ever talked to him about the forged check; Griffith said no, and said he had never asked appellant about the forged check because "I had no occasion to." Griffith testified that appellant never paid back the $1,800 he had lent appellant. He testified he generally tried to keep his checkbook in his jacket pocket, but did not wear the jacket all the time.

Appellant himself cross-examined Griffith. His questions were not unastute. Griffith admitted he had never returned to his room and found appellant in it. Appellant also asked Griffith whether he had also accused two other employees of the forgery and Griffith admitted appellant had promised to pay back the $1,800 he had earlier borrowed.

Seeing as how Griffith in his direct testimony had not implicated appellant, except to say that appellant worked at the nursing home and had been in his room, we think appellant's own cross-examination was fully adequate to meet the testimony. He was awarded his right of confrontation, and he took advantage of it. The evidence against appellant came mostly from Lonnie Brown, with whom he admitted being on August 1 when the forged check was cashed, from the fact that he was the obvious link between Lonnie Brown and Griffith, and from the pertinent evidence of a very similar transaction. Griffith made no accusation against appellant. We conclude without hesitation that if there was any error whatever arising from appellant's lack of counsel at the revocation hearing, in the trial court's finding that Griffith was unavailable for this trial and in admitting Griffith's transcribed revocation testimony and the affidavit, it is highly probable such error did not affect the verdict (*Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869); *Cauley v. State*, 130 Ga. App. 278, 286-288, 290-293 (203 SE2d 239)) and, as further regards any possible constitutional error, was harmless beyond a reasonable doubt. See *Kirkland v. State*, 141 Ga. App. 664 (234 SE2d 133).

2. We find no error, in the first place, in the trial court's ruling that Griffith was unavailable to testify and that the evidence had sufficient indicia of reliability and trustworthiness to support its admission under *Higgs v. State*, supra. The fact that his day nurse testified generally that he seemed alert and had good days does not render ineffective or incredible his physician's testimony that, having suf

fered a debilitating stroke, Griffith experienced varied and unpredictable behavior patterns. It is not necessary that an appearance in court be deemed "life-threatening" to a witness, or that he be dead (although the trial court conceded this would be pretty "conclusive") to authorize a finding that he is unavailable to testify, particularly if his testimony might be deemed unreliable because of a present infirmity. We should note that there was so little negative implication against appellant in Griffith's revocation testimony, that his unavailability as prosecuting witness at this trial might just as well be a circumstance which turned to appellant's favor.

We find no basis to reverse this verdict, and we find further that even without the complained-of evidence, the evidence was such that a rational juror could find appellant guilty of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560).

*Judgment affirmed. Deen, P. J., and Benham, J., concur.*

DECIDED SEPTEMBER 5, 1989.

*Kenneth D. Feldman*, for appellant.

*Thomas J. Charron, District Attorney, Debra H. Bernes, Assistant District Attorney*, for appellee.