S93A1383. BAIRD v. THE STATE.
(440 SE2d 190)

BENHAM, Justice.

This is a case in which the state is seeking the death penalty. We granted interim appellate review pursuant to OCGA § 17-10-35.1 to determine whether the trial court erred in denying three of appellant's motions to suppress.

On July 31, 1989, the Clarke County Police Department investigated a murder which had occurred between 5:15 p.m. and 6:30 p.m. the day before. The victim was an employee of a pet store in a shopping center. Pat Harris, an employee of a neighboring store, informed the police that a man who was "acting strange" had come into her store the day of the murder. When the man left, he walked in the

direction of the murder victim's store. Later that afternoon, the man returned to the door of her store, but did not come in. When the man left that time, Harris again observed him walking in the direction of the victim's store. Harris stated that, at some point, she saw the man driving a late model blue Pontiac Grand Am with damage to its front end and both headlights knocked out. When Harris left her store just after 5:00 p.m., she noticed that the man's vehicle was still parked next to the murder victim's car. She told police that the victim's store, under ordinary circumstances, would have been closed by 5:00 p.m. on that date. In addition to a description of the car, Harris was able to describe the general appearance of the man in question.

Police subsequently issued a BOLO (Be On the Look Out) for an automobile matching the description Harris gave. A short time thereafter, appellant's car, which was identical to the BOLO description, was pulled over by a deputy from the Clarke County Sheriff's Department.

A routine check of appellant's driver's license revealed that there were outstanding arrest warrants against him in Gwinnett County. Based on that information, the deputy sheriff placed him under arrest. The record does not show that *Miranda* warnings were given appellant at this time.

Officers from the Clarke County Police Department arrived on the scene within minutes. A police officer read appellant his *Miranda* rights, and appellant agreed to speak to police, but he was not interviewed at that time. Shortly thereafter, the police asked permission to search appellant's car. Appellant gave verbal consent to the search, but after the officer read the consent to search form which stated that the search was being made in conjunction with a murder investigation, appellant responded that "if this ha[s] to do with a murder investigation, [I] might ought to talk to a lawyer." Another officer stated then that appellant had been read his rights and asked him if he wished to consent to the search of his car. Appellant responded that he would consent to the search, and signed the consent form. A Desert Eagle .357 Magnum semi-automatic pistol which had been stolen from an Oconee County pawn shop was found in the front seat of appellant's car.

Appellant was transported to the Clarke County police station where officers again administered *Miranda* warnings prior to interviewing him. Appellant stated that he was willing to speak to the police, and stated that he did not want a lawyer. The police began the interview by obtaining limited personal information from appellant. The interrogating officer then inquired into appellant's reference to a lawyer prior to signing the consent to search form. Appellant responded,

that was when you asked me about searching the car. See I just didn't know how to handle that type thing. And see, I used to work for him and I, you know, I thought I'd — I thought about calling him, but I don't guess it matters.

Appellant reiterated that he was willing to proceed with the interview without the presence of counsel.

1. Appellant argues that the trial court erred in denying his motion to suppress the statement he made to police officers at the Clarke County police station following his arrest. Appellant maintains that he invoked his Fifth Amendment right to counsel after the consent to search form was read to him, and that any subsequent interrogation was in violation of *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), and *Minnick v. Mississippi*, 498 U. S. 146 (111 SC 486, 112 LE2d 489) (1990).

However, the record supports the trial court's finding that appellant's statement that he "might ought to talk to a lawyer," was made in response to the state's request to search his vehicle, and was not an assertion of his Fifth Amendment right to counsel during custodial interrogation. Statements made by appellant during his subsequent interview at police headquarters confirm that conclusion. At most, appellant's reference to counsel was a limited request for an attorney to be present solely during the search of his car, an issue not before us in this appeal.

> [A] defendant may make a limited request for counsel, which the police are "required to honor to no greater extent than the express limits of his reservation. *Connecticut v. Barrett*, 479 U. S. [523] (107 SC 828, 93 LE2d 920) (1987)." [Cit.]

*Pitts v. State*, 259 Ga. 745 (4) (a) (386 SE2d 351) (1989).

> [Appellant's] limited requests for counsel, however, w[as] accompanied by affirmative announcements of his willingness to speak with the authorities. The fact that officials took the opportunity provided by [appellant] to obtain an oral [statement] is quite consistent with the Fifth Amendment. *Miranda* gives the defendant a right to choose between speech and silence, and [appellant] chose to speak.

*Connecticut v. Barrett*, supra, 479 U. S. at 529.

Appellant also argues that his reference to counsel following his stop on the highway constituted an equivocal assertion of a Fifth Amendment right to counsel which the police failed to clarify. Appellant points out that certain federal courts have held that where an individual makes an equivocal request for counsel during custodial in-

terrogation, '[f]urther questioning thereafter must be limited to clarifying that request until it is clarified." *Owen v. State of Alabama*, 849 F2d 536, 539 (11th Cir. 1988); *Towne v. Dugger*, 899 F2d 1104 (11th Cir. 1990), and cases cited therein. We conclude that the police in this case adequately clarified the meaning of appellant's reference to counsel, and did so prior to any significant custodial interrogation.

The record shows that interrogation of appellant did not take place at the time of his arrest. It did not take place at the time the consent to search form was presented to him, even though he had previously expressed his willingness to speak to police without a lawyer. Nor did it occur during transport to the police station. The record shows that *Miranda* rights were again administered to appellant at the police station, and that he expressed his willingness to answer questions without the presence of counsel. The police then asked routine questions, including appellant's age, marital status, address and educational background. That questioning falls within the "routine booking questions" exemption from *Miranda*. *Pennsylvania v. Muniz*, 496 U. S. 582 (110 SC 2638, 2650, 110 LE2d 528) (1990). After asking the biographical questions, the police clarified appellant's earlier reference to counsel. Appellant stated that he did not desire the presence of an attorney, and the interview proceeded. We conclude that the procedure used in this case did not violate appellant's Fifth Amendment right to counsel, and the trial court did not err in denying the motion to suppress the statement appellant made at the police station.

*Minnick v. Mississippi*, supra, does not require a different result, as the record does not support appellant's contention that his statement was the product of police-initiated questioning after he had asserted his Fifth Amendment right to counsel.

2. Nor did the trial court err in denying appellant's motions to suppress two statements he made to an investigator while in custody at the Oconee County jail. The uncontradicted evidence shows that appellant initiated both communications sought to be suppressed. After the first communication, appellant's attorney instructed him not to speak to anyone in the Oconee County Sheriff's Department again. Nonetheless, eight days later, appellant sent word to the investigator that he wanted to speak to him. After receiving *Miranda* warnings, appellant signed a waiver form. Because appellant initiated both exchanges with the investigator, this case falls within the exception to *Edwards v. Arizona*, 451 U. S. 477, 484-485 (101 SC 1880, 68 LE2d 378) (1981). The record supports the trial court's finding that appellant waived any previously asserted right to deal with law enforcement officers through counsel alone. *Oregon v. Bradshaw*, 462 U. S. 1039 (103 SC 2830, 77 LE2d 405) (1983).

Therefore, the trial court did not err in denying appellant's mo-

tions to suppress both statements.
*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 28, 1994.

*Theresa M. Clyne,* for appellant.
*Harry N. Gordon, District Attorney, Gerald W. Brown, Assistant District Attorney, Michael J. Bowers, Attorney General,* for appellee.