S95A1678. LUALLEN v. THE STATE.
(465 SE2d 672)

HUNSTEIN, Justice.

Mary Carolyn Luallen was found guilty of the malice murder of her 19-year-old niece, Angie Jernigan, and was sentenced to life in prison. She appeals from the denial of her motion for a new trial.[1]

1. Evidence was adduced from which a jury was authorized to find that Luallen, who had temporary custody of Jernigan's infant, was upset over Jernigan's plan to regain custody of her child. On the afternoon of July 27, 1992 Luallen met with Jernigan. While in Luallen's car with the baby in the back seat, Luallen shot Jernigan twice

---

[1] The homicide occurred on July 27, 1992. Luallen was indicted on February 1, 1993 in Chattooga County. She was found guilty on March 11, 1993, and was sentenced the same day. Her motion for new trial, filed April 2, 1993 and amended November 16, 1994, was denied on June 26, 1995. A notice of appeal was filed on July 14, 1995. The appeal was docketed on July 20, 1995. Oral arguments were heard on October 10, 1995.

in the head with a single action revolver (which required the hammer and trigger each to be pulled back before the gun would fire). Forensic evidence established that the muzzle of the revolver was in contact with the victim's skin for both shots. The body was placed in the trunk of the car and taken to Luallen's home, where she placed it in the backyard and covered it with a mattress. That evening Luallen persuaded a friend to help her move the victim's car from a parking lot near the victim's work place to the home of the victim's grandparents. A note purporting to be from the victim (but not in her handwriting) and claiming that she had left town was found in the car.

Expert evidence established that the victim's body sustained post-mortem injuries in that the head had been nearly decapitated with cuts consistent with the use of a saw. A circular saw rendered inoperable by entwined bloody clothing was found on the scene. There was also evidence that the mattress covering the body and the surrounding soil had been saturated with gasoline. In the early hours of July 30, 1992, Luallen tried to remove the victim's decomposing body from her backyard but was unable to put the body in the trunk of her car. When her husban0 returned from work, she informed him about the crime and together they went to the police, where she made two statements. In the first statement, made at 4:38 a.m., she claimed that while talking to the victim and a male friend in her backyard, she fired a warning shot in the air which hit the victim. She also told the police the weapon was under the seat in her car. After searching Luallen's car, where blood was found in the interior and trunk, and investigating the matter more fully, police questioned Luallen again at 7:15 p.m., at which time she stated that after picking the victim up from work, she accidentally shot the victim twice in the head while retrieving the gun from the back seat of the car.

We find the evidence sufficient to enable a rational trier of fact to find Luallen guilty of murder beyond a reasonable doubt under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Luallen contends the trial court erred by denying her motion for new trial because the evidence at trial and newly discovered expert evidence established that Luallen's statements to the police were not voluntary.

The evidence showed that at the time of her statements Luallen was taking "nerve pills" (the prescription drug Xanax), had recently sustained the loss of her teenage son in an automobile accident, and had not been sleeping well. Based on the testimony of the officer who conducted the interviews and a review of the videotaped interviews

themselves, the evidence adduced at the *Jackson-Denno* hearing[2] authorized a finding that appellant was rational and coherent and that her statements were given knowingly and voluntarily. See *Corn v. State*, 240 Ga. 130 (3) (240 SE2d 694) (1977); see generally *Henson v. State*, 258 Ga. 600 (1) (372 SE2d 806) (1988).

As to the newly discovered evidence claim, it is well established that a defendant seeking a new trial based on newly discovered evidence must satisfy the court as to all six requirements set forth in *Timberlake v. State*, 246 Ga. 488, 491 (1) (271 SE2d 792) (1980). Luallen presented expert testimony that her Xanax abuse, sleep deprivation, and personal tragedies rendered her statements involuntary. However, the record establishes that defense counsel knew of her possible diminished mental capacity in that they sought and obtained her mental evaluation not only by a court-ordered psychologist but also by an expert employed by the defense. Thus, Luallen's mental condition at the time she gave the statements was not information obtained since trial; Luallen has not shown that it was not from want of due diligence that she did not acquire this information earlier; and Luallen has not shown that the information is so material that it would have resulted in a different judgment. Luallen is not entitled to a new trial on the basis of newly discovered evidence. *Timberlake v. State*, supra.[3]

3. Luallen contends denial of her new trial motion was error because she received ineffective assistance of counsel in two regards: (a) counsel's failure to have the two psychologists, who had evaluated her in regard to her insanity at the time of the crime and her ability to assist counsel at trial, also examine her as to the voluntariness of the statements she gave the police; and (b) counsel's failure to introduce expert psychological evidence in mitigation.

(a) The record establishes that in regard to admission of Luallen's statement, counsel obtained and reviewed not one but two mental evaluations of Luallen from respected psychologists, interviewed witnesses, reviewed the State's file (which included the videotapes of Luallen's statements) and thoroughly cross-examined witnesses during the *Jackson-Denno* hearing. Under the circumstances in this case, and relying on the "strong presumption" that counsel's performance was not deficient, *Smith v. Francis*, 253 Ga. 782 (1) (325 SE2d 362) (1985); *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), we affirm the trial court's ruling that trial counsel was not ineffective as asserted. See *Hosick v. State*, 262 Ga.

---

[2] *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

[3] We thus need not address the State's claim that the defense expert's testimony lacked credibility, in that the expert did not review Luallen's videotaped statements, the witness statements or trial testimony, or perform any psychological testing in arriving at his opinion.

432 (1) (421 SE2d 65) (1992).

(b) At the hearing on motion for new trial, trial counsel testified that they chose to introduce mitigation evidence solely through cross-examination of a State witness who knew Luallen and could testify about the behavioral changes she had observed in Luallen since the death of her son. This decision was clearly part of counsel's trial tactics and strategy and while it "may have been wise or unwise, [it did] not constitute ineffective assistance of counsel." *Austin v. Carter*, 248 Ga. 775, 780 (285 SE2d 542) (1982).

4. Luallen contends the trial court erred by admitting her second statement because the police interrogated her after she had invoked her right to counsel during her first statement. The record reveals that when initially questioned at 4:25 a.m., Luallen was read her *Miranda* rights[4] and invoked her right to counsel, ending the interrogation. As Luallen was being led off, she initiated a conversation about seeing the victim's infant and indicated she would talk to the police. This first statement, begun at 4:38 a.m., was videotaped and Luallen confirmed on the tape she had reconsidered and wanted to talk, commenting "I will talk to you tonight, but I will still talk to my lawyer tomorrow." She was read her rights again, signed a written waiver, and gave the statement. Nearly 15 hours later, at 7:15 p.m. the same day, the police reinitiated their questioning. It is uncontroverted that as of that time no attorney had been contacted by or on behalf of Luallen. Luallen was read her rights a third time and signed a written waiver before giving her second statement.

Luallen asserts that her comment that she would "talk to [her] lawyer tomorrow" was a clear invocation of counsel such that the police, by reinitiating questioning and obtaining her second statement, acted in violation of *Edwards v. Arizona*, 451 U. S. 477 (101 SC 1880, 68 LE2d 378) (1981), as further refined in *Davis v. United States*, 512 U. S. ___ (114 SC 2350, 129 LE2d 362) (1994).[5] We do not agree.

> Invocation of the *Miranda* right to counsel "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." [Cit.] But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning. [Cits.]
>
> Rather, the suspect must unambiguously request coun-

---

[4] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

[5] Luallen raises this contention solely under the U. S. Constitution.

sel. As we have observed, "a statement either is such an assertion of the right to counsel or it is not." [Cit.] [A suspect] must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.

*Davis v. United States*, supra, 114 SC at 2355.

Luallen clearly waived her right to counsel after she initiated contact with the police and no further clarification was required before the police were entitled to proceed with that interrogation. Her comment about speaking to an attorney "tomorrow" indicated solely that she *might* invoke the right to counsel at a later time and merely reflected a "likelihood that [Luallen] would wish counsel to be present" in the future, a comment which does not meet the test for applicability of *Edwards v. Arizona*, supra. *McNeil v. Wisconsin*, 501 U. S. 171, 178 (111 SC 2204, 115 LE2d 158) (1991). At the time the police reinitiated questioning, there was no clear assertion of a right to counsel by Luallen, and the police, by reading Luallen her *Miranda* rights a third time and obtaining a written waiver of those rights, properly clarified any possible ambiguity that may have been created by Luallen's earlier comment. See *Baird v. State*, 263 Ga. 868 (1) (440 SE2d 190) (1994). There was thus no error in the admission of Luallen's second statement.

5. Luallen contends the trial court committed reversible error by admitting testimony by Sergeant Patterson that when Luallen and her husband entered the Sheriff's office the morning of July 30, in response to the sergeant's question whether he could help them, the husband stated in Luallen's presence that Luallen had killed her niece. The trial court admitted the testimony based on the hearsay exception that the statement was made in Luallen's presence. However, this Court has disapproved that hearsay exception in *Jarrett v. State*, 265 Ga. 28 (453 SE2d 461) (1995), holding that "a witness in a *criminal* trial may not testify as to a declarant's statements based on the acquiescence or silence of the accused." Id. at 29 (1).

Nevertheless, no reversible error exists for the reason that the testimony by the sergeant as to what was said by the husband was admissible, not as an impermissible comment upon Luallen's silence, but under OCGA § 24-3-1 (b) "from necessity." The two prerequisites for the admission of hearsay because of necessity are 1) necessity, and 2) particularized guarantees of trustworthiness. *McKissick v. State*, 263 Ga. 188 (3) (429 SE2d 655) (1993). The first prerequisite is satisfied since the husband claimed the marital privilege, OCGA § 24-9-23, and could not be compelled to testify against his wife. See *Patterson v. State*, 202 Ga. App. 440 (4) (414 SE2d 895) (1992). See also *Higgs*

*v. State*, 256 Ga. 606 (4) (351 SE2d 448) (1987). The second prerequisite was satisfied by Sergeant Patterson's testimony at trial which established that the husband gave the statement immediately upon meeting the sergeant in order to initiate an official investigation into the victim's death; there is no indication the husband ever recanted or sought to change his statement; and his statement recounts matters later corroborated by other evidence. See id. at (5).

6. The record does not support Luallen's contention that certain forensic evidence (namely, that hair found on the circular saw blade at the crime scene was head hair) was admitted in violation of OCGA § 17-7-211. We also find no error in the trial court's denial of Luallen's motion for a mistrial regarding testimony about the capabilities of an inoperable chain saw found on the scene. The trial court sustained defense objections to the testimony and gave adequate curative instructions to the jury. See generally *Stanley v. State*, 250 Ga. 3 (2) (295 SE2d 315) (1982).

*Judgment affirmed. All the Justices concur.*

FLETCHER, Presiding Justice, concurring.

Relying on the Georgia Constitution, I would adopt the rule that investigating officers must ask questions to clarify whether a suspect wants a lawyer when he or she makes an ambiguous or equivocal request for counsel.[6] This rule would provide that "when a suspect under custodial interrogation makes an ambiguous statement that might reasonably be understood as expressing a wish that a lawyer be summoned (and questioning cease), interrogators' questions should be confined to verifying whether the individual meant to ask for a lawyer."[7] Because the defendant did not challenge the admission of her second statement under our State Constitution and the U. S. Supreme Court has held that the Federal Constitution does not require officers to ask clarifying questions, I reluctantly concur in Division 4.

DECIDED JANUARY 22, 1996.

*Cook & Palmour, Bobby Lee Cook, Todd Johnson*, for appellant.
*Ralph Van Pelt, Jr., District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Wesley S. Horney, Assistant Attorney General*, for appellee.

---

[6] See *Hall v. State*, 255 Ga. 267 (336 SE2d 812) (1985).
[7] See *Davis v. United States*, 512 U. S. ___ (114 SC 2350, 2364, 129 LE2d 362) (1994) (Souter, J., concurring).