### 65602. RAMSEY et al. v. THE STATE.

QUILLIAN, Presiding Judge.

Defendants Jack and Betty Ramsey, husband and wife, appeal their convictions for procuring others to commit arson in the first degree.

The evidence authorized the jury to find as follows: Betty Ramsey was the Chief Steward of the union at Frito Lay's plant in Chamblee. Her husband belonged to a different union at the General Motors plant in Doraville. Doris Glover also was a member of the union at Frito Lay. The Frito Lay union went on strike, but Glover crossed the picket line and returned to work about a week after the strike started. Moulder, who was a picket crew captain under Betty Ramsey, called Glover and told her she could be hurt if she continued to cross the picket line. About two weeks after the call, an unoccupied dwelling house owned by Glover and situated next to her mobile home in Forsyth County burned to the ground. Larry Turner and his nephew Gary Turner were arrested shortly thereafter. Larry Turner admitted to law officers that he had burned the house with Gary's assistance and that someone had hired him to do it. He then made a telephone call to defendant Betty Ramsey from the jail and the call was tape recorded with Larry's knowledge and consent. Later the same day Larry was equipped with a concealed radio transmitter and went to defendants' home where he had a lengthy conversation with both defendants and their son and received $50 from them. This conversation was also tape recorded. The recorded conversations contained incriminating statements by the defendants indicating their complicity in the burning of Glover's house. *Held:*

1. The day before the trial commenced the judge who tried the case was involved in another trial and Judge Mills conducted the voir dire and selection of the jury, which is asserted as error. Judge Mills had formerly been the District Attorney for the judicial circuit and had been appointed to the bench over a year before, 10 days after the alleged offense was committed. At the jury selection proceedings Judge Mills asked several times if anyone had any objections to his presiding. No objections were made nor was any mention made of any

possible disqualification. The following day the case continued with a motion hearing before the judge who presided at trial, at which defendant's counsel informed the judge that the alleged offense took place on January 15, 1981 when Judge Mills was district attorney of the circuit and that he should not have been presiding when the jury was selected. No specific motion was made or relief requested. The state concedes that Judge Mills was of counsel in the case under *King v. State,* 246 Ga. 386 (7) (271 SE2d 630) and would have had to disqualify himself if the defendants had so requested.

"Appellant enumerates as error . . . the failure of the trial judge to disqualify himself in a proceeding involving the sufficiency of search warrants which he had issued personally. However, appellant failed to raise a proper objection, and ' "waiver of disqualification of a judge may be effected expressly by agreement, or impliedly by proceeding without objection with the trial of the case with knowledge of the disqualification." [Cit.]' [Cit.]" *Jackson v. State,* 146 Ga. App. 736 (2) (247 SE2d 512). Compare, *Ga. Power Co. v. Watts,* 184 Ga. 135 (4), 144 (190 SE 654); *Moon v. State,* 154 Ga. App. 312 (4) (268 SE2d 366).

In the instant case the record shows defendants were addressing motions to Judge Mills as district attorney as late as December 1981, two months before he presided at the jury selection, and 11 months after he had been appointed as a judge. In addition, it appears that the subject of Judge Mills' qualification to try the case had been discussed in November 1981 and it had been determined that he was disqualified. Moreover, the day after jury selection when the disqualification was brought to the attention of the judge who tried the case just before the trial started, no specific motion was made nor was any relief requested at that time. Under these circumstances we find that defendants impliedly waived the disqualification of Judge Mills to preside at the jury selection by proceeding with knowledge of his disqualification.

Defendants' contention that Judge Mills prejudiced them by not allowing them additional jury strikes is without merit. "When two or more defendants are tried jointly for a crime or offense, such defendants shall be entitled to the same number of strikes as a single defendant if tried separately. . . . In the event two or more defendants are tried jointly, the court, upon request of the defendants, acting in its sole discretion, may allow an equal number of additional strikes to the defendants, not to exceed five each, as the court shall deem necessary, to the ends that justice may prevail." OCGA § 17-8-4 (Code Ann. § 27-2101).

There is nothing in the record to show that the denial of the discretionary additional strikes was an abuse of Judge Mills' sole

discretion. *Merrill v. State,* 130 Ga. App. 745 (3b) (204 SE2d 632).

2. Error is enumerated because the trial court permitted witnesses Ridenour and Cornett to testify when alleged scientific reports on which their testimonies were based had not been provided the defendants as required by OCGA § 17-7-211 (Code Ann. § 27-1303).

OCGA § 17-7-211 provides that upon proper request defendants are entitled to copies of any written scientific reports in the possession of or available to the prosecution at least 10 days prior to trial or the reports will be excluded as evidence. In *Tanner v. State,* 160 Ga. App. 266 (1) (287 SE2d 268) and *Osborn v. State,* 161 Ga. App. 132 (4) (291 SE2d 22) we held that if such scientific reports are not provided, the testimony of witnesses based upon the reports is also excluded.

In the instant case the tape recording of Larry Turner's conversation with the defendants transmitted by a radio transmitter concealed on his person was of poor quality and was sent to the FBI for enhancement to make the conversation more understandable. Ridenour, an employee of the FBI, technically enhanced the tape and returned it to the local law enforcement officers with enhanced copies of the recording by a letter of transmittal, which stated that two enhanced copies of the original tape were made, one reel to reel and one cassette, and that in order to obtain maximum intelligibility the enhanced reel copy should be played on a good tape player and reviewed using quality headphones. In accordance with his usual procedure, Ridenour made no report of how he performed the enhancement. He did prepare notes about how he had enhanced the tape recording to assist him when he testified.

We find no error in permitting Ridenour to testify. The letter of transmittal does not qualify as a "scientific report" and was not in the possession of or even known to the prosecution until the trial had commenced. Thus, failure to provide it to defendants 10 days prior to trial was not error. In accordance with his usual practice, Ridenour made no formal report of the procedures he used to enhance the tape; thus the prosecutor had no report to provide the defendants. We do not agree with defendants' assertion that OCGA § 17-7-211 (Code Ann. § 27-1303) requires the creation of a report if none exists. The notes Ridenour prepared to assist him in testifying do not constitute a "scientific report." *Hartley v. State,* 159 Ga. App. 157 (2), 159 (282 SE2d 684); *Sears v. State,* 161 Ga. App. 515, 516 (288 SE2d 757); *Hartline v. State,* 161 Ga. App. 847 (2) (288 SE2d 902).

We likewise find no error in the admission of Cornett's testimony. He was an investigator for the State Fire Marshall. He investigated the site of the fire where he took some soil and debris

samples and recovered the remnants of a plastic container. He identified two photographs which were taken by law enforcement officers at the scene of the fire. He made a report of his investigation to his superiors but it was not provided to the prosecutor. The remainder of his testimony was about his searching of Larry Turner's car, which produced nothing, observing Turner wired with the radio transmitter, and accompanying Turner part of the way when he went to defendants' home wearing the transmitter. None of Cornett's testimony was derived from any scientific analysis as it only related to what he had seen and done at the fire site and in connection with Turner's activities. He offered no opinions or conclusions based upon any scientific examinations. Thus his testimony was not excludable under OCGA § 17-7-211 (Code Ann. § 27-1303).

3. The denial of defendants' motion to suppress the admission of the two tape recordings of their conversations with Larry Turner made on the ground that Turner did not consent to the conversations being recorded is alleged as error.

OCGA § 16-11-66 (Code Ann. § 26-3006) authorizes the recording of any communication sent by telephone or other means of communication where the communication is directly in the furtherance of a crime and one party to the communication consents to it.

The evidence on this issue was in conflict with several law officers testifying that Turner was fully aware of what he was doing and was not coerced into consenting to the conversations and the recording thereof. Turner's testimony, while somewhat equivocal, indicated the contrary.

"Unless clearly erroneous, a trial court's findings as to factual determinations and credibility relating to admissibility will be upheld on appeal. [Cit.]" *Crowe v. State,* 160 Ga. App. 189 (287 SE2d 56).

We find that the trial court's ruling admitting the recordings was not clearly erroneous and that there is no merit in this enumeration.

4. It is contended that the trial court erred in admitting in evidence the two tapes of Turner's conversations with defendants and the transcripts thereof because they were the result of a confession made by Turner. Cited in support is OCGA § 24-3-5 (Code Ann. § 38-306), which states: "After the fact of conspiracy is proved, the declarations by any one of the conspirators during the pendency of the criminal project shall be admissible against all"; and *Crowder v. State,* 237 Ga. 141, 152 (227 SE2d 230), which held that a confession of a co-conspirator identifying other conspirators made after the conspiracy had ended is not admissible against other conspirators under OCGA § 24-3-5 (Code Ann. § 38-306).

However, OCGA § 24-3-5 (Code Ann. § 38-306) and *Crowder v. State* do not exclude the testimony of a coconspirator, only the admission of his declarations to third persons. *Sutton v. State,* 237 Ga. 423 (2) (228 SE2d 820). Turner's confession or declaration to the police was not introduced and *Crowder v. State* is, therefore, inapposite. OCGA § 24-3-5 (Code Ann. § 38-306) "does not render a conspirator incompetent to testify as to facts; it simply prohibits a conspirator from testifying as to declarations made by one conspirator outside the presence of, and upon the trial of, another conspirator." *Birt v. State,* 236 Ga. 815 (1), 822 (225 SE2d 248, cert. denied, 429 U. S. 1029). Thus, Turner could have testified who had hired him, although he, through asserted lack of memory, did not do so while admitting that someone had hired him.

Voluntary, non-custodial, incriminating statements of defendants are admissible through the testimony of any one who heard the statements. See generally, Agnor's Georgia Evidence §§ 11-7, 11-8, 11-13; Green, Georgia Law of Evidence, §§ 233, 242, 246. Turner heard defendants' statements and could have testified to what they said. Turner's voluntary participation in the recording of the conversations does not alter their basic admissibility as the lawful electronic interception of the conversations only created a recording of what Turner could have related as a witness. "If one person is at liberty to repeat what another has said to him, and surely we all agree on this, unless privileged, how can one's freedom of speech be violated by mechanically assuring accuracy between private conversationalists?" *State v. Birge,* 240 Ga. 501, 502 (241 SE2d 213). Compare, *Drake v. State,* 245 Ga. 798 (2) (267 SE2d 237); *Conner v. State,* 160 Ga. App. 202 (2) (286 SE2d 441); *Payne v. State,* 161 Ga. App. 233 (2) (291 SE2d 236).

5. Defendant Jack Ramsey claims that the taped telephone conversation between Larry Turner and defendant Betty Ramsey should not have been played for the jury as it was hearsay as to him and that therefore his motion for severance should have been granted.

One of the grounds on which a court may exercise its discretion in granting severance of defendants is if there is "a danger that evidence admissible against one defendant will be considered against another despite the admonitory precaution of the court." *Cain v. State,* 235 Ga. 128, 129 (218 SE2d 856).

We find no merit in this claim as defendant Jack Ramsey "has not shown how this evidence prejudiced his own case or met the test of *Cain* [*v. State,*] supra." *Jackson v. State,* 249 Ga. 751 (6), 757 (295 SE2d 53). A cautionary instruction was not even sought concerning this taped conversation.

6. There was no error in denying defendants' motions for directed verdicts of acquittal. As we find the evidence sufficient to authorize a rational jury to find defendants guilty beyond a reasonable doubt, "it could hardly be found to demand a verdict of acquittal." *Milner v. State,* 159 Ga. App. 887 (1), 888 (285 SE2d 602).

7. We find no error in permitting the prosecutor to read excerpts of what defendants said from the admitted transcripts of their recorded conversations with Larry Turner. Since counsel in argument clearly have the right to comment on the evidence, it is not improper for them to repeat what testimony was, to read from documents which have been admitted in evidence, or to read from admitted transcripts of recordings played for the jury.

"The general rule is that counsel must confine their argument to the law and the evidence . . . [H]e shall not in his argument estray from the law, evidence, circumstances, and pleadings in the case . . . 'What has transpired in the case from its inception to its conclusion . . . is the subject of legitimate comment.' [Cits.]" *Ga. Power Co. v. Puckett,* 181 Ga. 386, 391 (182 SE 384).

8. The remaining allegations of error are either mooted by the foregoing or are not meritorious.

*Judgment affirmed. Sognier and Pope, JJ., concur.*

DECIDED FEBRUARY 22, 1983 —
REHEARING DENIED MARCH 21, 1983 —

*Glyndon C. Pruitt, Walter M. Britt,* for appellants.
*Rafe Banks III, District Attorney,* for appellee.

