### S95A1286. BUNDRAGE v. THE STATE.
(462 SE2d 719)

CARLEY, Justice.

Sherrod Williams, Chadwick Barksdale and appellant were tried separately for the murder and armed robbery of one victim. Williams' trial ended when he pled guilty to armed robbery and the murder charge was dismissed. Barksdale's trial resulted in his conviction on both charges, but this Court reversed. *Barksdale v. State*, 265 Ga. 9 (453 SE2d 2) (1995). Appellant's trial resulted in a guilty verdict on both charges and he appeals from the judgments of conviction and sentences entered by the trial court on the jury's guilty verdicts.[1]

1. The evidence shows that appellant and Barksdale fatally shot the victim, and that they also stole money and drugs from him. Thus, the jury was authorized to find appellant guilty of murder and armed robbery beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Barksdale v. State*, supra at 10 (1).

2. In an interview with officers, Williams denied his participation in the crimes, but admitted his subsequent knowledge thereof. Williams then agreed to place a recorded telephone call to Barksdale. During this recorded call from Williams, Barksdale implicated appellant in the crimes. Over appellant's hearsay objection, the trial court admitted the recorded call into evidence. Appellant enumerates this evidentiary ruling as error.

OCGA § 24-3-5 recognizes an exception to the hearsay rule for the statements of a co-conspirator. Although Williams may have terminated his participation in the conspiracy by the time he placed the recorded call, Barksdale was still conspiring to conceal the crime. *Gunter v. State*, 243 Ga. 651, 661-662 (7) (256 SE2d 341) (1979). Williams' voluntary participation in the recording of the call would not alter the basic admissibility of Barksdale's statements under *Gunter v. State*, supra, as the electronic interception of the conversation cre-

---

[1] The crimes occurred on January 25, 1993. Appellant was indicted on March 17, 1993. The verdicts were returned and the sentences were imposed on April 5, 1994. Appellant's motion for new trial was filed on April 20, 1994 and denied on April 20, 1995. His notice of appeal was filed on April 21, 1995. The case was docketed in this Court on May 5, 1995 and was orally argued on July 10, 1995.

ated a recording of Barksdale's statements, which statements Williams could have related if he had been a witness. *Duren v. State*, 177 Ga. App. 421, 422 (1) (339 SE2d 394) (1986). See also *Ramsey v. State*, 165 Ga. App. 854, 858 (4) (303 SE2d 32) (1983). Accordingly, the statements made by Barksdale in the recorded call were admissible under the exception to the hearsay rule recognized by OCGA § 24-3-5.

The statements made by Williams during the recorded call would not be admissible pursuant to OCGA § 24-3-5 if he was no longer a co-conspirator. *Crowder v. State*, 237 Ga. 141, 153 (227 SE2d 230) (1976). However, the recording of the call was offered only for the limited purpose of showing the content of Barksdale's statements to Williams.

> Sometimes an utterance is merely a part of the surrounding circumstances of an occurrence. Such statements are not offered to prove the fact asserted in the statement. . . . Proof of such statements is original evidence; it is not an exception to hearsay.

Green, Ga. Law of Evidence (4th ed.), § 288. Here, the statements made by Williams to Barksdale were necessary to explain why Barksdale responded in the way that he did. "When, in a legal investigation, . . . conversations . . . are facts to explain conduct and ascertain motives, they shall be admitted in evidence not as hearsay but as original evidence." OCGA § 24-3-2. It follows that Williams' statements in the recorded call would be admissible as part of reciprocal and integrated utterances between him and Barksdale, for the limited purpose of putting Barksdale's responses in context and making Barksdale's statements intelligible to the jury and recognizable as the statements of a co-conspirator. See *United States v. Gutierrez-Chavez*, 842 F2d 77, 81 (5th Cir. 1988). There is no contention that any of Williams' statements in the recorded call were affirmatively prejudicial to appellant. Compare *United States v. Alonzo*, 991 F2d 1422, 1426-1427 (8th Cir. 1993); *United States v. Smith*, 578 F2d 1227, 1233, 1238 (8th Cir. 1978). Moreover, our own review of the transcript of the recorded call shows that none of Williams' statements therein was inculpatory of appellant. Furthermore, appellant's general hearsay objection to the admission of all of Williams' statements was properly overruled so long as any of those statements was not hearsay and was admissible as original evidence under OCGA § 24-3-2. *Willis v. State*, 263 Ga. 70, 71 (2) (428 SE2d 338) (1993); *Porter v. Chester*, 208 Ga. 309, 310 (3) (66 SE2d 729) (1951).

3. Appellant also contends that the admission of the recorded call deprived him of his right to confront the witnesses against him. Con-

trary to appellant's contention, however, the declarant's unavailability is not a prerequisite to the admission of a co-conspirator's statements. *United States v. Inadi*, 475 U. S. 387 (106 SC 1121, 89 LE2d 390) (1986); *Gay v. State*, 249 Ga. 747, 751 (3) (294 SE2d 476) (1982). All that is required is sufficient indicia of reliability as set forth in *Dutton v. Evans*, 400 U. S. 74 (91 SC 210, 27 LE2d 213) (1970). *Bourjaily v. United States*, 483 U. S. 171, 183 (107 SC 2775, 97 LE2d 144) (1987); *Mooney v. State*, 243 Ga. 373, 390 (3) (254 SE2d 337) (1979). The statements made by Williams in the recorded call were not admissible under the co-conspirator exception to the hearsay rule, but as original evidence. With regard to Barksdale's statements in the recorded call, appellant does not assert, and we do not find, a lack of sufficient indicia of reliability. See *Mooney v. State*, supra at 390 (3).

Appellant's remaining contentions regarding admission of the recorded call were not specifically raised by objection at trial and cannot now be raised for the first time on appeal. *Brown v. State*, 250 Ga. 862, 866 (4) (302 SE2d 347) (1983); *McGee v. State*, 205 Ga. App. 722, 726 (9) (423 SE2d 666) (1992).

4. In the recorded call, Williams' possible submission to a polygraph test was mentioned. After the recording of the call was played for the jury, appellant elicited testimony that Williams did take a polygraph test subsequent to the call, and then submitted a statement which differed from that he originally made. Over appellant's objection, the trial court admitted the statement made by Williams prior to his polygraph test, on the ground that appellant opened the door to its admission. This ruling is enumerated as error.

Appellant contends that the door was opened only to admission of the results of Williams' polygraph test and not to admission of Williams' prior statement. However, the testimony elicited by appellant that Williams changed his story after the polygraph test did open the door to inquiry concerning Williams' first statement. See *Beasley v. State*, 202 Ga. App. 349 (1) (414 SE2d 663) (1991). Appellant does not contend on appeal that, even if he opened the door to inquiry concerning Williams' first statement, that statement itself nevertheless was inadmissible hearsay. Compare *Pierce v. State*, 176 Ga. App. 795, 796 (2) (338 SE2d 40) (1985); *Green v. State*, 115 Ga. App. 685, 689 (2) (155 SE2d 655) (1967). Accordingly, we find no reversible error in the trial court's admission into evidence of Williams' first statement.

5. The admission of evidence that appellant purchased cocaine on the day of the homicide is enumerated as error. Appellant purchased the cocaine from the same person who later told the victim that appellant wanted to purchase more drugs. Thereafter, the victim left with appellant and later became the victim of a homicide. Evidence of appellant's purchase of the cocaine was admissible as part of the res

gestae. *Leutner v. State*, 235 Ga. 77, 79 (3) (218 SE2d 820) (1975).

*Judgment affirmed. All the Justices concur, except Fletcher, P. J., and Sears, J., who concur specially.*

SEARS, Justice, concurring specially.

Although I agree with the conclusion reached in the majority opinion that the statements that Williams and Barksdale made on the tape recording are admissible in evidence, I disagree with the majority's rationale for that conclusion.

1. As for the statements of Barksdale, the majority opinion concludes that his statements are admissible because at the time of the call Barksdale was still an active conspirator and because

> the electronic interception of the conversation created a recording of Barksdale's statements, which statements Williams could have related if he had been a witness. *Duren v. State*, 177 Ga. App. 421, 422 (1) (339 SE2d 394) (1986). See also *Ramsey v. State*, 165 Ga. App. 854, 858 (4) (303 SE2d 32) (1983).

Majority opinion at 813-814. The second reason given by the majority for admitting Barksdale's statements — that the electronic interception only created a recording of statements made by Barksdale that Williams could have related as a witness — is unnecessary and dangerous. It is unnecessary because the first reason given by the majority — that Barksdale was still an active co-conspirator —, coupled with a proper authentication of the tape, is all that is needed to uphold the admission of Barksdale's statements. The fact that Williams could have testified as to Barksdale's statements adds nothing to the opinion: It is neither a recognized exception to the hearsay rule nor a prerequisite to authenticating a tape. The second reason is dangerous because it implies that the fact that a person could have testified in court is an exception to the hearsay rule and renders out-of-court statements admissible. Although this reasoning does not lead to problems in this case because Barksdale's statements were admissible under a legitimate exception to the hearsay rule, it could lead to erroneous results in other cases. *Duren* and *Ramsey*, in fact, appear to represent such cases. In both of those cases, a co-conspirator who had confessed cooperated with police by tape-recording conversations with the defendant. In both cases, the trial court admitted the tape containing those conversations, and in both cases the defendants contended on appeal that the conversations, which would include the co-conspirators' statements as well as the defendants' own statements, were inadmissible. Further, in both *Duren* and *Ramsey* the Court of Appeals appears to have reasoned that the co-conspirators' state-

ments during the conversations were admissible simply because they could have come into court and testified.[2] Of course, that someone may come into court and testify is not an exception to the hearsay rule, and a party should not be permitted to circumvent the hearsay rule by tape recording or videotaping a witness's statement and introducing it in court in lieu of having the witness actually testify. In fact, we have recently addressed a similar situation in *Thornton v. State*.[3] In that case, the state videotaped the statements of two children who were not the victims of abuse and introduced those videotapes at trial instead of having the children testify as to the abuse in question. We held the tapes inadmissible under the rule against hearsay and reversed Thornton's conviction. Under the majority opinion, however, the videotapes in *Thornton* would have been admissible because the videotaping only "created a recording of what [the two children] could have related if [they] had been a witness." Id. at 813-814.

In short, the fact that Williams could have testified to Barksdale's statements is an inappropriate and unnecessary factor to consider in determining whether Barksdale's statements were admissible. Barksdale's statements were admissible because he was an active part of the conspiracy when he made the statements and because the tape was properly authenticated.

2. With regard to Williams's statements on the tape, the majority opinion holds that they are admissible under OCGA § 24-3-2, not for the truth of the matter asserted, but for the limited purpose of providing context for Barksdale's statements so as to make them recognizable as a statement of a co-conspirator of Bundrage and thus admissible at trial. I cannot agree with this analysis.

First, in support of its holding that Williams's statements were admissible under § 24-3-2, the majority cites Green, Ga. Law of Evidence (4th ed.), § 288, to the effect that "an utterance [that] is merely a part of the surrounding circumstances of an occurrence" is admissible as original evidence. Here, however, Williams's statements on the tape were not part of the surrounding circumstances of an occurrence, and thus would not be admissible under the rationale set forth in Green.[4] Moreover, under § 24-3-2, evidence is admissible to explain

---

[2] In both cases the Court of Appeals reasoned that the conversations were admissible on the grounds that *Crowder v. State*, 237 Ga. 141 (227 SE2d 230) (1976), did not prevent a conspirator who had confessed from testifying at trial as to facts; that a defendant's statements are admissible through the testimony of any one who heard them; that for these reasons the co-conspirator could have testified regarding the contents of the conversations; and that therefore the taped conversations were admissible.

[3] 264 Ga. 563, 564-566 (2) (a, b) (449 SE2d 98) (1994).

[4] Compare *Atlanta Gas Light Co. v. Slaton*, 117 Ga. App. 317, 319 (2) (160 SE2d 414) (1968) (a witness who saw a person tampering with a gas meter shortly before a gas explosion (the occurrence) was allowed to testify to what the person was doing and should have been allowed to testify as to what the person said regarding his tampering with the gas line).

an actor's (here, Barksdale's) conduct or motives.[5] Williams's statements themselves, however, do not explain any conduct or motives of Barksdale's, but simply provide context for Barksdale's responses.

The majority also relies on *United States v. Gutierrez-Chavez*.[6] In that case, the court ruled that a co-conspirator's statements in a taped conversation with the defendant were admissible under the theory that they were not hearsay. The court reasoned that the statements were not offered for their truth, but only for the limited purpose of putting the responses of the defendant into context and making them recognizable as an admission.[7]

In this case, however, at least in some critical instances the significance of Williams's statements is in the truth of them. For instance, when Williams asks Barksdale "[w]hat y'all [Barksdale and Bundrage] do with them guns," and Barksdale responds that "they gone," Barksdale's response has no significance standing alone. The response is only relevant to the issues in the case if Williams's implicit assertion that Barksdale and Bundrage had the guns is true.[8] If Williams's implicit assertion is true, then Barksdale's response is relevant to the case as an admission that he and Williams had the guns and had disposed of them, and would be admissible as a statement of Barksdale's regarding the conspiracy.

Moreover, at least one federal court has questioned whether this exception should apply when the statements of the co-conspirator are not merely minor, insignificant statements, but contain affirmatively prejudicial statements against the defendant.[9] In this regard, although the majority states that "there is no contention that any of Williams' statements in the recorded call were affirmatively prejudicial to appellant," and that its review of the record shows that none of Williams's statements were inculpatory of Bundrage, my review of the tape recording indicates that the whole thrust of the recording, thus including Williams's statements, is affirmatively prejudicial to Bundrage. To begin, Williams's implicit assertion, discussed above, that Barksdale and Bundrage had the guns is affirmatively prejudicial to Bundrage. In much of the rest of the conversation, Barksdale *and* Williams express concern that the police have visited Williams and mentioned Bundrage's and Barksdale's names to him as possible suspects, and they discuss how they have to "watch" themselves. Thus,

---

[5] See *Momon v. State*, 249 Ga. 865, 867 (294 SE2d 482) (1982).

[6] 842 F2d 77, 81 (5th Cir. 1988).

[7] Id. at 81.

[8] See Weinstein's Evidence, § 801 (c) [01] (if a statement is offered for the fact that the statement was made and not for the truth of the matter asserted, the fact that the statement was made must be relevant to the issues in the lawsuit).

[9] See *United States v. Smith*, 578 F2d 1227, 1233, 1236-1241 (8th Cir. 1978). See also *United States v. Alonzo*, 991 F2d 1422, 1426-1427 (8th Cir. 1993).

Williams's statements on the tape do offer fertile grounds for inferences of Bundrage's guilt.

3. Although I disagree with the majority's rationale for holding that Williams's statements were admissible, I conclude that they were admissible under the theory of adoptive admissions.

Under Federal Rule of Evidence 801 (d) (2) (B) a statement is not hearsay if "the statement is offered against a party and is . . . a statement of which the party has manifested an adoption or belief in its truth." Some federal courts have reasoned that, if a defendant, through the give and take of a phone conversation, has manifested an intent to adopt the statements of the other party to that conversation, then the other party's statements are not hearsay.[10]

In Georgia, although we do not have an adoptive admissions exception to the hearsay rule, we do have OCGA § 24-3-36, which provides that "[a]cquiescence or silence, when the circumstances require an answer, a denial, or other conduct, may amount to an admission." Moreover, this Court has held that the list of hearsay exceptions in our evidence code is not exhaustive;[11] that

> "the two underlying reasons for any exception to the hearsay rule are a necessity for the exception *and a circumstantial guaranty of the trustworthiness of the offered evidence —* that is, there must be *something present which the law considers a substitute for the oath of the declarant and his cross examination by the party against whom the hearsay is offered*";[12]

and that if those two reasons are met, the hearsay in question is admissible.[13]

In this case, the necessity requirement is met on the ground that Williams was unavailable to testify (due to his refusal to testify) as to critical evidence in a murder case.[14] Further, the trustworthiness of Williams's statements stems from the fact that a conspirator (here, Barksdale) would not manifest an intent to adopt the statements, particularly incriminating ones, of another conspirator (Williams) unless those statements were true. In this regard, hearsay statements of one person that have been adopted by another person are at least as

---

[10] See *Gutierrez-Chavez*, 842 F2d at 81; *United States v. Rollins*, 862 F2d 1282, 1296-1297 (7th Cir. 1988).

[11] *Higgs v. State*, 256 Ga. 606, 607 (351 SE2d 448) (1987); *Rea v. Pursley*, 170 Ga. 788, 793 (154 SE 325) (1930).

[12] *Higgs*, 256 Ga. at 607 (emphasis in original) (quoting *Chrysler Motors Corp. v. Davis*, 226 Ga. 221, 224 (1) (173 SE2d 691) (1970)).

[13] *Higgs*, 256 Ga. at 607-608.

[14] See *Higgs*, 256 Ga. at 608.

reliable and probably more so than statements to which the latter person has merely acquiesced or remained silent.[15] We have limited § 24-3-36 when hearsay statements are sought to be admitted based on a defendant's silence, *Jarrett v. State*, 265 Ga. 28 (453 SE2d 461) (1995), but *Jarrett* has no application here as the hearsay statements would not be admitted based on Bundrage's silence. The statements, instead, would be admitted under a two-step analysis — first, that Barksdale adopted them as his own, and, second, that Barksdale's statements, including the ones he adopted, are admissible against Bundrage under the co-conspirator exception to the hearsay rule.

4. In sum, because I agree with the majority that Barksdale's statements on the tape are admissible under the co-conspirator exception to the hearsay rule but disagree with part of the majority's rationale for admitting those statements, and because I would admit Williams's statements on the tape under a different theory than that utilized by the majority, I specially concur in the majority opinion.

I am authorized to state that Presiding Justice Fletcher joins in this special concurrence.

DECIDED OCTOBER 16, 1995 —
RECONSIDERATION DENIED NOVEMBER 3, 1995.

*Lawrence & Ford, Francis N. Ford*, for appellant.
*Fredric D. Bright, District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Richard J. Warren, Assistant Attorney General*, for appellee.