A12A0009. REDINBURG v. THE STATE.
(727 SE2d 201)

ELLINGTON, Chief Judge.

A Chatham County jury found Justin Redinburg guilty beyond a reasonable doubt of aggravated assault with a deadly weapon, OCGA § 16-5-21 (a) (2); and possession of a firearm during the commission

of a crime against another person, OCGA § 16-11-106 (b) (1). He appeals from the denial of his motion for new trial, contending that the evidence was insufficient to support his convictions, that the court erred in excluding a recording of a phone conversation between two potential witnesses, and that the trial court improperly excluded certain evidence. As explained below, we conclude that the trial court erred in denying Redinburg's motion for a new trial and reverse his convictions.

1. As an initial matter, we will address Redinburg's general assertion that there was insufficient evidence to support his convictions.

When a criminal defendant challenges the sufficiency of the evidence supporting his or her conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979). It is the function of the jury, not this Court, to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the evidence. Id. Viewed in this light, the record reveals the following facts.

In the early morning hours of June 27, 2009, officers with the Savannah-Chatham Metropolitan Police Department responded to a 911 call from someone who reported that a man had been shot near the Southside Assembly of God. The officers found a trail of blood leading from the church's parking lot to the body of Marcus Allen, who was lying face down on the church's lawn. An autopsy revealed that Allen had died from gunshot wounds to his chest and arm. A .38 caliber bullet was found lodged inside Allen's chest. Officers also found multiple shell casings and bullet fragments scattered throughout the area between the church and the lawn. A duffel bag and wallet belonging to Allen and some coins were found on the church's steps.

Investigators did not identify a suspect in the shooting until several months later, when a man named Robert Cureton made a statement to the police in which he claimed that he and a friend, Cortez Alls, had seen the defendant, Redinburg, shoot the victim. At Redinburg's trial, Alls testified that he had known Redinburg for several years and that, on the night in question, he was sitting on the porch of his home, which was next door to the church, with Redinburg and Cureton. According to Alls, at some point, Redinburg stood up, said that he was going to rob somebody, and walked toward the church while carrying a .357 Smith & Wesson revolver. Redinburg sat down next to the victim on the church steps and started talking to him. Moments later, the victim stood up and started running away,

but Redinburg chased after him and shot him. Alls admitted that, even though he had seen the shooting and had even checked the victim's body to see if he was alive, he did not call the police. Instead, an hour to an hour and a half passed before some passersby saw the victim's body and called 911.

In addition, Alls testified that, at the time of the shooting, his friend, Cureton, and Redinburg were dating the same woman, Raven Williams, who was pregnant and who had told each of the men that he was the baby's father. According to Alls, this had caused a feud between the men, and Cureton had threatened to kill Redinburg on the night at issue, before the victim's shooting.

The State called Williams as a witness at trial, and she admitted that she had become pregnant about a month before the June 2009 shooting; that she had told both Redinburg and Cureton, individually, that he was the baby's father; and that she was still "romantically involved" with Redinburg at the time of the shooting. According to Williams, less than a month after the shooting, Redinburg told her that he had "shot the man at the church, and [he] shot six shots at the time and only one bullet hit him." Williams also admitted that she had talked to both Redinburg and Cureton throughout the year after the shooting and that they had each insisted that the other man had been the shooter. After Cureton mentioned Williams' name during his statement to police implicating Redinburg in Allen's death, an investigator interviewed Williams, and she agreed to assist in the investigation by talking with Redinburg while surreptitiously recording their conversation. Redinburg, however, failed to make any specific admissions about the shooting during the conversation.

The last witness called by the State was Saidah Smalls, a friend of Williams, who testified that she had met Redinburg through Williams and that, the second time she saw Redinburg, she asked him about the shooting. According to Smalls, Redinburg repeatedly denied that he was involved in the shooting, but then, after she persisted in questioning him about the incident, he finally admitted shooting the victim, explaining only that the victim "shouldn't have been there." Smalls testified, however, that Redinburg made that statement to her sometime in April or May of 2009, which was *before* the shooting. She repeated that testimony on redirect, but, when further questioned by the State about the timing of Redinburg's statement, she backtracked and testified that she was not sure about when Redinburg had made the statement, but that she thought it was *after* the shooting.

After the State rested its case-in-chief, Redinburg's mother provided an alibi for her son, who was 17 years old and lived with his family in June 2009, testifying that he was at home at the time of the shooting. Although the jury ultimately acquitted Redinburg on charges

of murder and felony murder, it found him guilty of aggravated assault with a deadly weapon and possession of a firearm during the commission of a felony crime against another.

Viewing the evidence in the light most favorable to the jury's verdict, as we must, we conclude that it is sufficient to support a finding that Redinburg was guilty beyond a reasonable doubt of the crimes for which he was convicted.

2. Redinburg contends that the trial court erred in excluding from evidence a recording of a phone conversation between Alls and Cureton that took place at the behest and under the direction of police investigators a few months after the shooting. Redinburg argues that the complete recording was admissible to impeach Alls' trial testimony by showing that he promised to lie to the police about Cureton's involvement in Allen's death, as well as to show the jury that Alls' testimony and demeanor on the witness stand was simply an act that was inconsistent with Alls' natural, out-of-court manner of communicating. For the following reasons, we agree with Redinburg's arguments and conclude that the trial court committed harmful error when it prevented Redinburg from playing the unredacted recording of the phone call to the jury.

The events leading to the phone call are as follows. About three months after the shooting, police investigators still had not identified a suspect in Allen's death. In a seemingly unrelated incident, however, police officers arrested Cureton for possession of a stolen truck. Alls had also been riding in the truck before it was stopped by the police, but he escaped on foot. Following his arrest, Cureton agreed to assist the police by making a telephone call to Alls that was recorded without Alls' knowledge. During the phone call, the two men talked about the shooting that led to Allen's death and discussed a handgun that one of them had thrown out the window while the police were chasing the truck.[1] They acknowledged that their fingerprints were going to be on the gun and that the ammunition for the gun was the same type that had been used to shoot Allen. Alls also promised to provide an alibi for Cureton for the night of the murder.

The State provided a recording of the phone call to Redinburg's counsel before trial and, at trial, told the court that it did not have any objections to the recording, noting that it had subpoenaed both Alls and Cureton to appear as witnesses. Redinburg's counsel then talked at length about the phone call during his opening statement to the jury, emphasizing that it would show that Alls and Cureton were lying about Redinburg's involvement in the crime. As the trial

---

[1] The appellate record contains a transcript of the entire phone conversation.

progressed, however, Cureton never appeared to testify, and attempts to locate and apprehend him pursuant to a witness contempt citation and arrest warrant failed. When it was clear that Cureton would not be present to testify, Redinburg's counsel expressed his intent to play the recording of the phone call. The State objected, however, on the basis that, because Cureton had failed to testify, his portion of the conversation was inadmissible hearsay. The trial court agreed that Cureton's statements constituted inadmissible hearsay and ruled that the recording would only be admitted if Cureton's statements were redacted.

Subsequently, in its order denying Redinburg's motion for new trial, the trial court again ruled that Cureton's statements had been inadmissible hearsay. In so ruling, the trial court relied on the Supreme Court of Georgia's opinion in *Jackson v. State*, 256 Ga. 536 (350 SE2d 428) (1986). The holding of *Jackson* is inapplicable to the instant case, however, because *Jackson* is clearly distinguishable from this case on both the facts and the legal issues addressed.[2]

Instead, the admissibility of Cureton's statements in the recorded phone call in this case is governed by OCGA § 24-3-2, which states that, "[w]hen, in a legal investigation, information, conversations, letters and replies, and similar evidence are facts to explain conduct and ascertain motives, they shall be admitted in evidence *not as hearsay but as original evidence*." (Emphasis supplied.) That statute has repeatedly been cited as authority for admitting recordings of phone calls between witnesses, co-conspirators, informers, and/or other third parties that were made *after* the crimes at issue and at the direction of law enforcement officers, even when one of the parties to the conversation did not testify at trial, as in this case. For example, in *Bundrage v. State*, 265 Ga. 813 (462 SE2d 719) (1995), the Supreme

---

[2] In *Jackson*, the defendant was charged with murdering his former wife, and the State presented a "prior difficulties" witness, who testified that, at some point before the murder, she overheard a phone call between the defendant and his former wife during which the defendant was cursing and yelling about custody of the couple's children. Id. at 536 (2). The issue presented on appeal was whether the witness' testimony was admissible. Id. at 536-537 (2). The Court held that, because the witness' only knowledge of the identity of the caller was based on the decedent's statement that it was her former husband, and because that statement was inadmissible hearsay, there was no competent evidence to identify the caller as the defendant. Id. at 537 (2). Therefore, it was error for the trial court to admit the witness' testimony regarding what she overheard during the call as evidence of the couple's prior difficulties. Id.

We note that *Jackson* has not been cited as authority in any case addressing the issue presented here, i.e., the admissibility of a phone conversation between two alleged eyewitnesses to a crime, when the phone call took place *after* the crime and was recorded by the police, particularly when, as here, the conversation may have shown that the eyewitnesses had motives to lie about the defendant's involvement, that they were colluding or conspiring to mislead police investigators, and/or that the trial testimony of one or both parties to the call may have been impeached by their statements during the call.

Court of Georgia considered the admissibility of a recording of a phone call from a co-conspirator who was cooperating with the police to an unsuspecting co-conspirator who was still attempting to conceal the crimes at issue. Id. at 813-814 (2). The issue was whether the statements of the first co-conspirator were admissible as original evidence under OCGA § 24-3-2, because they were offered for the limited purpose of putting the second co-conspirator's responses, which implicated the defendant in the crimes, in context and making them intelligible to the jury. Id. at 814 (2). The Court acknowledged that "[s]ometimes an utterance is merely a part of the surrounding circumstances of an occurrence. Such statements are not offered to prove the fact asserted in the statement. Proof of such statements is original evidence; it is not an exception to hearsay." (Citation and punctuation omitted.) Id. Thus, the Court ruled that, because the statements made by the first co-conspirator were necessary to explain why the second co-conspirator responded in the way that he did, it followed that those statements were admissible as original evidence, pursuant to OCGA § 24-3-2, as part of "reciprocal and integrated utterances" between the men. (Citation omitted.) Id.[3]

Given that, in this case, Cureton was essentially acting as an informant (or at least an agent of police investigators) at the time he had the phone conversation with Alls, we conclude that Cureton's recorded statements were admissible as original evidence, pursuant to OCGA § 24-3-2 and the authority cited above. Therefore, the trial court erred when it excluded the statements on the basis that they constituted inadmissible hearsay.

Moreover, we conclude that the erroneous exclusion of the unredacted recording of the phone call was not harmless in this case. Redinburg's defense was that Cureton had been the person who had shot Allen; that Cureton and Alls had conspired to lie to the police by telling them that they had witnessed Redinburg commit the crime; that Cureton and Alls had disposed of the murder weapon three months later, while they were riding in a stolen truck that was being chased by the police; and that, while Cureton was in jail for possession of the stolen truck, he had called Alls, who had agreed to provide a false alibi for Cureton for the night Allen was shot. Further, the

---

[3] See *Daniels v. State*, 238 Ga. App. 511, 521 (3) (e) (519 SE2d 269) (1999) (concluding that the statements of a police informant during a phone call recorded by the police were admissible and not subject to a hearsay objection); see also *Perez v. State*, 254 Ga. App. 872, 875 (3) (564 SE2d 208) (2002) (concluding that the statements of a police informant during a phone call to a co-conspirator, which was recorded by the police, were admissible under OCGA § 24-3-5, the co-conspirator exception to the hearsay rule, because, at the time, the conspiracy between the parties to the call was on-going).

evidence of Redinburg's guilt, while legally sufficient to support his convictions, was neither overwhelming nor so compelling that it rendered harmless the erroneous exclusion of the recording. There was no physical evidence tying Redinburg to the crime or the murder weapon; Alls was the only eyewitness to the crime who testified at trial, and he testified that he did not remember anything about his phone conversation with Cureton; Cureton was in a sexual relationship with a pregnant woman who was also involved with Redinburg and, thus, arguably had a significant motive to lie about Redinburg's participation in the shooting; Cureton failed to appear at trial to testify, in spite of a subpoena, and law enforcement officers were unable to find him, despite an aggressive search for him while the trial was in progress; Williams, the woman who testified that she heard Redinburg make a confession to the shooting, had misled him about her pregnancy and, thus, may have had a motive to lie about the confession; and the witness to an alleged second confession by Redinburg *twice* testified that it had occurred at least a month *before* the shooting had actually taken place. Finally, despite Alls' testimony that he saw Redinburg shoot Allen (who was an innocent bystander) after trying to rob him and while Allen was running away, the jury *still* acquitted Redinburg of murder and felony murder.

Consequently, we conclude that there is a reasonable possibility that the outcome of the trial would have been different if the recorded phone conversation had been played in its entirety for the jury. See *Burris v. State*, 204 Ga. App. 806, 809-810 (2) (420 SE2d 582) (1992) (finding that the trial court's exclusion of certain evidence was reversible error, explaining that, even if the excluded evidence was insufficient to convict someone else of the crime, if the evidence was enough to raise a reasonable doubt of the defendant's guilt in the mind of a juror, it was adequate to change the outcome of the case). Therefore, Redinburg's convictions cannot stand, and he is entitled to a new trial on the charges of aggravated assault and possession of a firearm.[4]

3. Redinburg also contends that the trial court erred in ruling that certain evidence was irrelevant and inadmissible, specifically evidence that Alls and Cureton had been involved in a separate crime that had occurred on the day before Allen's death, that they had possessed certain weapons, and that they were gang members.

---

[4] Because Redinburg was acquitted of murder and felony murder, double jeopardy bars retrial on those charges. See *Williams v. State*, 288 Ga. 7, 8 (2) (700 SE2d 564) (2010) (a verdict of acquittal is a bar to a subsequent prosecution for the same offense).

Because there is a possibility that these issues may arise again upon retrial, we will address them herein.

(a) The record shows that, at a pretrial hearing on the admissibility of evidence of the prior crime, both Alls and Cureton took the witness stand and refused to testify about the crime, asserting their Fifth Amendment right against self-incrimination. In addition, according to the State, there was not enough evidence to charge either Alls or Cureton with the prior crime, and neither man had been offered a deal as to that crime in exchange for their cooperation in prosecuting the instant case.

> [Although] a defendant is entitled to introduce relevant and admissible evidence implicating another person in the commission of the crime or crimes for which the defendant is being tried[, the] proffered evidence must raise a reasonable inference of the defendant's innocence[,] and it must directly connect the other person with the corpus delicti or show that the other person has recently committed a crime of the same or similar nature. The proffered evidence cannot raise the mere speculation that some other person committed the crime, and it must do more than raise a conjectural inference that another person committed the [crime].

(Citations and punctuation omitted.) *Dawson v. State*, 283 Ga. 315, 316-317 (2) (658 SE2d 755) (2008). We find that, absent any competent evidence showing that Alls or Cureton had actually committed the prior crime, Redinburg has failed to meet his burden of showing that evidence of the prior crime was admissible. Id.; see *Carr v. State*, 279 Ga. 271, 272-273 (2) (612 SE2d 292) (2005) (The defendant attempted to show that another person had committed the crime for which he was charged by presenting evidence of a separate crime that the person had allegedly committed. The Supreme Court found that the trial court did not abuse its discretion in excluding the evidence because the defendant had failed to present competent evidence to show that the other person had actually committed the separate crime or that the separate crime was the same as or similar to the crime for which the defendant was on trial.).

(b) As for the exclusion of evidence showing Alls' or Cureton's alleged gun ownership or gang membership, the only evidence proffered by Redinburg to support those allegations was undated photos and videos that Redinburg's counsel had downloaded from "YouTube" and Cureton's "My Space" page in July 2010, more than a year after Allen's death, that allegedly showed Cureton holding a semi-automatic weapon and flashing gang signs. Although, as shown

above, Cureton was present during the pretrial hearing on the admissibility of the evidence, Redinburg failed to question him about the photos or videos or otherwise establish any legally sufficient foundation for their admission. See OCGA § 24-4-48 (b) (subject to any valid objection, a photo is admissible when the trial court determines, based upon competent evidence, that the photo reliably shows the fact or facts for which it is offered); *Sweet v. State*, 276 Ga. 545, 546-547 (2) (580 SE2d 231) (2003) (The trial court did not abuse its discretion in finding that the defendant had failed to lay a proper foundation for the admission of a photo of another person holding an assault rifle, since the defendant had failed to establish the photo's origins or source and also had failed to connect the photo to the threatening letters that he claimed the person had sent to him.). More importantly, Redinburg has failed to show by the record that the trial court ever prevented him from cross-examining Alls about his gang membership at trial. Accordingly, we conclude that there is no merit to this claim of error.

*Judgment reversed. Phipps, P. J., and Dillard, J., concur.*

DECIDED APRIL 6, 2012.

*David M. Burns, Jr.*, for appellant.
*Larry Chisolm, District Attorney, David M. Sneed, Assistant District Attorney*, for appellee.